(26 App. Div. 487.)

### BURKE v. IRELAND et al.

### SAVAGE v. SAME.

(Supreme Court, Appellate Division, Second Department. March 15, 1893.)

1. NEGLIGENCE—DEFECTIVELY CONSTRUCTED BUILDING.

Where the owner of land contracts for the erection of a building thereon. in accordance with plans and specifications furnished by him, prima facie he is responsible for injuries resulting from the fact that the building thus erected is inherently defective and dangerous, and, if he can escape such liability by the fact that he employed a competent architect and acted upon his advice, it is incumbent upon him to affirmatively show those facts.

2. SAME—LIABILITY OF OWNER.

In such a case the liability of the owner for injuries resulting from his negligence extends even to third persons, with whom he had no contractual relations.

3. SAME—ACTS OF INDEPENDENT CONTRACTOR.

The general rule is that the owner of real property is not responsible for the negligent act of an independent contractor, and the exception existing where the act done is authorized only by some special franchise or privilege granted to the owner does not apply merely because of the existence of building laws, for they do not confer the privilege of building, but merely limit existing rights.

4. SAME—LIABILITY TO CONTRACTOR'S WORKMEN.

The reservation in a building contract of a right to the owner to inspect material and workmanship accrues solely to the benefit and security of the owner, and creates no duty on his part on behalf of the contractor's workmen.

5. SAME.

In order to render the owner liable for the negligent act of a building contractor, it must appear that the former either directed the act to be done or took an affirmative part in its commission.

6. SAME—DEFECTS IN STRUCTURE.

If an accident occurs through defects in a structure due to the owner's negligence, the fact that an independent contractor who erected the building was also negligent does not absolve the owner from liability.

7. SAME—ACTS OF ARCHITECT.

The owner of land who has contracted for the erection of a building thereon is not liable for the acts of the supervising architect not within the scope of his employment.

8. SAME.

Where an owner of land employs a competent and skillful architect to design a building to be erected thereon, and the workman of an independent contractor who constructs the building accordingly is injured by the collapse of the very work in the performance of which he is engaged, through a fault or defect in the design of which the owner neither knew nor should have known, the latter is not liable.

9. SAME.

But, to thus relieve the owner of liability, it must appear that he fairly committed the subject-matter to the architect, and that the deficiencies or defects of the design did not proceed from his interference or direction.

Appeal from trial term.

Action by Bridget Burke, as administratrix of John Burke, deceased, and by Mary Savage, of Michael Savage, deceased, against John B. Ireland, impleaded with John N. Parker and John M. Cornell. From judgments in favor of plaintiffs in both actions, and from an order denying a new trial, defendant Ireland appeals. Reversed.

Argued before CULLEN, BARTLETT, HATCH, and WOODWARD, JJ.

50 N.Y.S.—24

Benjamin F. Tracy, for appellant.
Charles J. Patterson, for respondents.

CULLEN, J.    The first action is brought by the plaintiff, as administratrix of her deceased husband, who was killed by the collapse of a building in the course of erection on the land of the appellant. The appellant and John H. Parker entered into an agreement whereby Parker contracted to erect the building according to certain plans and specifications prepared by one Behrens, an architect. · Parker entered into a subcontract with John M. Cornell, by which the latter agreed to furnish the structural ironwork requisite for the building, and into another subcontract with Joseph Guider, who agreed to do the plastering.    The construction of the building had so far proceeded that at the time of the accident the roof was on and the building in part inclosed.    The plaintiff's intestate at the time was engaged as a plasterer in the employ of Guider, the subcontractor.    While the building was at this stage of construction it collapsed, and by its fall many persons, including plaintiff's intestate, were killed or injured.    The plaintiff brought this action against the appellant as owner, Parker as contractor, and Cornell as subcontractor, alleging negligence in the prosecution of the work, which caused the building to collapse.    On the trial evidence was given tending to show that the plans and specifications of the building were faulty and defective; that a building erected in accordance with such plans would not be reasonably safe or secure; and that in some respects the plans and specifications were in violation of the building law.    Evidence was also given tending to show that the foundation of the pillar which probably first failed, and thus brought on the fall of the building, was improper, in that the thickness of the concrete was insufficient to bear the weight imposed on it, and also because the concrete was laid in part over earth and in part over an old cistern wall, which resulted in unequal settling of the foundation, and thus caused it to break.    There was further evidence to the effect that the iron pillars designed to carry the floors were insufficient in size, and that one of the pillars at the point where the building first failed was of improper quality and character and defective workmanship.    The contract called for concrete foundations 18 inches thick.    It appeared by the testimony of Murray, the foreman of the contractor Parker, that the concrete was laid only 12 inches thick, and Murray testified that this change was made in pursuance of directions given to him by the architect, Behrens.    The contract between Ireland and Parker did not cover the whole improvement; for the clearing away of the old structures on the land and the excavation of the ground had, at the time of the execution of the contract, already been let to another person, one Joseph Garry.    It appeared from the testimony of Murray that he gave the directions to Garry to make the excavation for this pier, and that Behrens, the architect, did not see the excavation until it was filled up with concrete. Parker's contract contained this specification: "No concrete shall be laid in trenches until same has been examined by the architect, as concrete must not be laid on a disturbed bottom.    No finished concrete work will be accepted unless same has been approved by the architect

before being covered over or built upon." It was also shown that during the progress of the work the plan of the building was modified by the erection of an additional story. On the trial the plaintiff contended that Cornell was guilty of negligence in furnishing defective ironwork; that Parker was guilty of negligence in the improper construction of the foundations; and that the appellant was guilty of negligence in the character of the plans of the building, in the acceptance of improper foundations for the structure, and in the failure to require Parker and Cornell to prosecute their work properly and conform to the provisions of the contract. The jury rendered a verdict against the appellant, Ireland, acquitting the other defendants, and from a judgment entered upon that verdict this appeal is taken. With the argument of the appeal in this case we heard the appeal from a judgment in the second action, brought for the death of another man killed by this same accident. The two causes were tried separately, and the evidence varies to such an extent that different rules govern the disposition of the two cases, and it has therefore become necessary for us to consider them to some extent separately. In the present case, neither the appellant, the architect, Behrens, nor the principal contractor, Parker, became a witness.

The first contention of the appellant is that his motion for a nonsuit should have been granted. It is insisted that he performed his whole duty when he employed a competent architect and a competent builder, and that he is not liable for negligence of the architect in the preparation of the plans, nor for the negligence of the contractor in the prosecution of the work, unless he knew of those defects. It is a sufficient answer to say that the question of how far an owner, being a layman, may be relieved from liability for the construction on his land of a dangerous or defective building, by the employment of a competent and proper architect, does not arise on the facts in this case. It does not appear, except from the recitals in the contracts, that Behrens was an architect at all, much less that he was a competent or proper one; nor does it in any way appear that Behrens was responsible for the plan and character of the building, and that the appellant was not. For aught that there is in the record before us, the whole plan and character of the building, the size of the foundation, of the walls, of the posts and the girders may have wholly proceeded from the direction of the appellant. The duty or discretion of an architect is confined within such limits as his employer imposes upon him. The appellant having contracted for the construction of this building, if the building was inherently defective and dangerous, prima facie he is responsible therefor; and if he can escape liability for such inherent weakness and danger by the employment of an architect, and his acting upon the architect's advice, it was incumbent on the appellant to affirmatively show those facts. Therefore the employment or advice of the architect is not an element in this case. In this view of the evidence the case is entirely similar to that of Pitcher v. Lennon, 12 App. Div. 357, 42 N. Y. Supp. 156. In that case the owner of a building in the course of construction, who had prepared the plans of the building and supervised its erection, was held liable for the death of one of the workmen caused by the collapse of the structure in conse-

quence of insufficient strength resulting from the design of the building and improper material used in its construction. The liability was chiefly placed on the proposition that the structure, as designed and planned by the owner, was in violation of law; but the opinion is careful to assert that the recovery might be upheld on other grounds. The appellant knew that, in the course of construction of the building, necessarily many persons would be engaged in work upon it, and that any weakness or insecurity in its design or construction would be imminently dangerous to human life. In such a case, a party is responsible for his negligence whereby third persons are injured, even though he has no contractual relations with such persons. Coughtry v. Woolen Co., 56 N. Y. 124; Devlin v. Smith, 89 N. Y. 470; Davies v. Elevating Co., 65 Hun, 573, 20 N. Y. Supp. 523. The motion to dismiss the complaint was therefore properly denied.

But, though the appellant was responsible for the defective design of the building, I do not think that he was necessarily responsible for any negligence by Parker in the execution of the contract. The respondent contends that the building laws which prescribe the manner in which structures are to be built make the owner an absolute guarantor that the building erected should be in compliance with the statute. The general rule is that the owner of real property is not responsible for the negligent act of an independent contractor who performs work thereon. To this rule certain cases are exceptions, as where the act which the owner has directed to be done itself creates the injury or is imminently dangerous. There is another class which forms an exception, where the duty is imposed by law or the act done is authorized only by some special franchise or privilege granted the owner. A chute or coal hole maintained in the street by the owner of the abutting property, and excavations in the highway made in the course of laying a railroad or gas mains therein, are examples of the latter class, and in such cases the person exercising the privilege or franchise must see to it, at his peril, that the contractor properly guards the obstructions created in the street. But the owner obtains by the building laws no privilege to construct buildings on his property. He has the right to improve his property as he will (not creating a nuisance), without the authority of any statute, and the building laws merely limit, in the exercise of the police power, existing rights; they do not confer any. If the structure erected, or in the course of erection, becomes a nuisance, the owner, even though he be not responsible for its original condition, doubtless at some point of time becomes responsible to third parties for its maintenance. Vogel v. Mayor, etc., 92 N. Y. 10; Timlin v. Oil Co., 126 N. Y. 514, 27 N. E. 786. But that principle is not at all applicable to the present case. None of the workmen on the building were the servants of the owner of the land, but either those of the contractor or of the subcontractor. The owner did, under the doctrine already discussed, owe such persons the duty of not imperiling their lives by his own negligence or affirmative act; but I know of no principle under which there rested upon him any obligation for their preservation from the negligence of their master or of fellow servants. In fact, I should be inclined to think they were as well able to judge the character and competency of

their master or of his co-contractors or their co-servants as the owner was, and at all times the determination whether to continue in the service or leave it rested solely upon them. "Where one employs a contractor to erect a building, the contractor is the principal of those whom he employs, and it is for them to inquire into his character for skillfulness and carefulness; the employer of the contractor is not a guarantor for his skill and care." Hunt v. Railroad Co., 51 Pa. St. 475. Nor is there anything in the terms of the contract between the appellant and Parker to take this case out of the general rule. A right of inspection of the. materials and workmanship was reserved, but was reserved solely for the benefit and security of the owner, who, at his pleasure, might dispense with it. This provision created no duty on the part of the owner in behalf of the contractor's workmen. Neither the right of the owner to modify or change the plans of the building, and direct new work or dispense with work called for by the plans, nor the provision that the work should be done under the direction of the architect, created the relation of master and servant between him and the contractor. Pack v. Mayor, etc., 8 N. Y. 222; Slater v. Mersereau, 64 N. Y. 138. Therefore, to render the appellant liable for the negligent act of the contractor, it must be made to appear that the former either directed the act to be done or took an affirmative part in its commission.

The evidence on the trial tends to establish that one of the most probable causes of the collapse of the building was the defective character of the foundation under the pillar, where the concrete was laid partly over earth and partly over the old cistern wall. Such, too, is the claim of the counsel for both parties. The question of who was responsible for the defective character of that foundation is not free from doubt. Parker's contract did not include the excavation. Under the specifications, a uniform thickness of 18 inches of concrete for the piers is prescribed. No provision whatever is made, either in the contract or in the specifications, for the contingency that excavation to the depth of two feet might not find soil on which it was safe to rest the foundation of the piers which were to carry the walls or columns. It might have eventuated, as probably was the actual case, that it was necessary to excavate below the bottom of the cistern wall before it would be safe to commence the laying of the concrete foundation. Or it might even have happened that quicksand would be found, and it would be necessary to drive piles or adopt some other special means to provide a secure place on which to lay the concrete. Under the contract, no duty was devolved upon Parker in these respects except one,—that no concrete should be laid in trenches until they had been examined by the architect. The duty, therefore, of providing a proper foundation upon which the concrete was to be laid, and of passing upon and determining the sufficiency of that foundation, rested on the owner or his agent. If there was negligence in this respect by the owner or agent, it would not absolve the former from liability, even though the contractor was also careless. The evidence tends to show that the trench was laid out by the foreman of Parker, the contractor, and that the excavation was made and the concrete laid in the absence of the architect. (In the second case the evidence is

different.)   On this state of facts, and assuming that the foundation was improper, the negligence of the contractor's foreman is plain, for the specifications provided that he should not lay concrete until the trenches had been inspected by the architect.   But it does not necessarily follow that the architect or superintendent of construction was also not to blame.   There is evidence tending to show that he absented himself from the building during the time the foundations were being excavated, and also that he accepted and passed the concrete work without having examined the bed on which it was laid.   It may be that the fact that concrete had already been laid before his attention was called to the trench might be a sufficient excuse for his conduct, and that even a careful man might have been deceived as to the character of the foundation.   This, however, was a question of fact for the jury.   Therefore we cannot say, as a matter of law, that the appellant was in no wise responsible for an accident occasioned by the improper character of the soil on which the concrete was placed. There was also evidence to the effect that the concrete was of an insufficient thickness.   Murray, the contractor's foreman, testified that the thickness was reduced from 18 inches to 12 inches by the direction of the architect.   On this question the trial court charged the jury: "If you find that twelve inches was not sufficient to sustain the weight of that superstructure, you will find that the defendants Ireland and Parker were guilty of negligence which contributed to the death of Mr. Burke."   To this charge the appellant excepted, and also asked the court to instruct the jury that the architect had no power to authorize the contractor to reduce the thickness of the concrete.   This request was refused, and the appellant excepted.   We are of opinion that the instruction and the refusal to charge were erroneous.   In this case (it is otherwise in the second case) there is no evidence to show that the architect had any power or authority except such as appears in the contract.   The contract provided that the work should be performed in accordance with the plans, elevations, specifications, and drawings, and that it should be executed under the direction and to the satisfaction, in all respects, of Behrens, or of other architect of the owner.   This provision did not authorize the architect to modify the plans or relieve the contractor from doing the work called for by his contract.   Glacius v. Black, 50 N. Y. 145.   Therefore, for neglect in this respect the appellant was not liable, as the act of the architect was not within the scope of his employment.   There are also several errors in the rulings of the trial court in rejecting the testimony of defendant's witnesses as to the cause of the accident which we think was competent expert evidence; but, as they may not occur on another trial, we deem it unnecessary to discuss them.   For these errors the judgment and order appealed from must be reversed, and a new trial granted.

The second action (Mary Savage, etc., v. John B. Ireland, etc.) is brought to recover damages for the death of plaintiff's husband, which was caused by the same accident detailed in the first case.   In this case the evidence varies from that given in the first case.   There was testimony given by the appellant, Ireland, tending to show that the

plans and specifications for the building were designed and prepared by the architect, Behrens, and that the latter was an architect in good professional standing. It might also be inferred, from the testimony of the appellant, that he had given Behrens power to modify the plans and specifications. The testimony on this trial does not clearly show that Behrens, the architect, was not present when the trench was dug for the concrete foundation on which the pillar that collapsed was to rest. In other respects the evidence was substantially the same as that given in the earlier case. The course of this trial differed from the other, in that the court declined to submit the question of the defects in the plan and design of the building and its dangers to the jury, but left the question of the appellant's liability to be determined by his negligence or misconduct in the performance of the work itself.

In disposing of this appeal it is unnecessary to go over the discussion of the law which we have entered upon in the preceding case. We think there are at least two errors fatal to the plaintiff's recovery. The appellant asked the court to charge that "the defendant Parker was an independent contractor, and for the negligence of Parker or of his servants the defendant Ireland was not liable in this action." And also: "The defendant Ireland is not responsible for the poor material, poor casting, or blowholes in the column on the sixth floor. If the jury find that the collapse was caused, as claimed by the plaintiff, by the failure of the column on the sixth floor by reason of its weakness caused by uneven casting, blowholes, and poor iron, they must find a verdict for the defendant Ireland." Both of these requests were refused, and to such refusals the defendant properly excepted. Under the view of the law which we have already expressed, that the owner was not liable to the contractor's servants or subcontractors and their servants for the negligence of any of those persons in the performance of the work, the appellant was entitled to have both of these requests charged. The respondent criticises the second request as improper, in that it failed to limit its application to the case of a finding that the defective iron was the sole cause of the collapse; in other words, that the defendant's negligence in other respects might also have contributed to the fall of the structure, and that in such case the fact that he was responsible for only one of several concurring causes would not relieve him from liability for the disaster. The legal proposition thus asserted is doubtless correct, but we do not regard the request as subject to the criticism passed on it. We think the request fairly referred only to the defective column being the sole cause of the falling of the building. However this may be, no such criticism can be passed on the first request. That presents only the question of the negligence of the contractor and the appellant's responsibility therefor. He might be responsible for negligence as to the same matter as to which the contractor was also negligent, but then, in our view of the law, his responsibility would be solely for his own negligence, and not for the negligence of the contractor. For these errors the judgment must be reversed and a new trial granted.

Thus far we have not discussed the question which, though not presented by either appeal, is necessarily involved in the cases, and will in all probability arise on a new trial,—the question of how far the

owner of real property is liable for the defects or errors in the design of a building, for the erection of which he contracts, proceeding from the negligence or misconduct of his architect. The question is one of doubtful solution and of uncertain answer. We have been able to find no authorities bearing directly on the subject. The question, so far as it can arise in these litigations, is only that of the owner's liability to his contractors or their workmen, and not to other parties. As between a master and his own workmen, the master is bound to use reasonable diligence to provide a safe place to work and safe appliances with which to work; and, this being the master's duty, the fault or neglect of any subordinate to whom he commits the work is not that of a fellow servant, but of the master himself. This, however, is subject to qualification. Where the master has no knowledge or experience in the business of furnishing appliances or erecting structures, and contracts with a competent party to furnish or erect them, he is not responsible for defects that may exist in them, unless he knew, or had reason to know, that such defects existed. So in Devlin v. Smith, 89 N. Y. 470, where it was necessary that a scaffold should be built to enable painters to paint the dome of a building, and the scaffold fell from defective construction, killing one of the journeymen, it was held that his employer, the boss painter, was not liable, as he had contracted for the erection of the scaffold by a competent and reputable builder, though he might have been responsible had he assumed the construction of the work himself or by his servants. To the same effect see Butler v. Townsend, 126 N. Y. 105, 26 N. E. 1017. The whole theory of liability imposed upon the master in this class of cases is for his personal negligence or fault, and he is only liable for the acts of other persons when such persons are discharging the duty that he should have done or assumed to do himself. In the conduct of a manufacturing business, the tools and appliances constantly wear out or become defective by use or accident. It may therefore be properly said that the repair or replacement of defective tools and appliances is a part of the conduct of the very business upon which the employer has entered. But a layman, neither a builder nor an architect, cannot be expected to know the strength of various structures, the strain on their various parts, or the requisite size or strength of the materials to carry those strains. It is also to be borne in mind that in this case it was the very work in the performance of which the plaintiffs' intestates were engaged that failed and caused their death. The question is therefore not strictly that of a proper place to work or appliance to work with, and there rests upon the owner a different degree of liability to those who may be engaged in the erection of a building from that which he bears to those who might use the building after it was erected. Stourbridge v. Railroad Co., 9 App. Div. 129, 41 N. Y. Supp. 128; Murphy v. Railroad Co., 88 N. Y. 146. We think that in such case, where an owner employs a competent and skillful architect to design the building, he is not responsible to contractors who agree to construct the building according to such design, for faults or defects in the design of which he neither knew nor should have known. Of course, to relieve the owner from liability, it must appear that he fairly committed the subject-matter to the

architect, and the deficiencies or defects of the design did not proceed from his interference or direction.

The judgments and orders appealed from should be reversed, and a new trial granted, costs to abide the event. All concur.