WILLIAM J. CALLAN, Appellant, *v.* PAUL B. PUGH, Respondent.

*Owner of a building — his liability to an employee of an independent contractor working therein.*

An owner of a building owes to an employee of an independent contractor doing work upon the building the duty to commit no act of affirmative negligence. He is not liable for any passive negligence such as a failure to provide the employee of the independent contractor with a safe place in which to work.

APPEAL by the plaintiff, William J. Callan, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of Kings on the 14th day of April, 1900, upon the dismissal of the complaint by direction of the court after a trial before the court and a jury at the Kings County Trial Term, also from an order entered in said clerk's office on the 14th day of April, 1900, dismissing the complaint, and also from an order entered in said clerk's office on the 1st day of March, 1900, denying the plaintiff's motion for leave to go to the jury and for a new trial.

*William C. Beecher,* for the appellant.

*H. Snowden Marshall,* for the respondent.

GOODRICH, P. J. :

The complaint alleged that the defendant was the owner of a building on Fifteenth street in the borough of Manhattan ; that the plaintiff was a bricklayer working in the cellar in constructing a pier

with the permission of the defendant; that above the place where the plaintiff was working was a covering of stone, which through the defendant's negligence was dangerous and unsafe and known to defendant to be so, and that by reason of defendant's negligence the covering collapsed and fell upon the plaintiff. At the opening of the trial the defendant moved to dismiss the complaint on the ground that it failed to state a cause of action, and the motion was denied. At the close of the plaintiff's case, the defendant again moved to dismiss the complaint; the court granted the motion and the plaintiff appeals.

The evidence showed that the plaintiff was in the employ of John Batten, who had a contract for putting up the brick work of the building. Batten was also doing as extra work the excavation of the cellar and digging out a place for the foundation of a wall to be built under an arch covering a vault which was under the sidewalk and outside of the building. The defendant gave Batten five dollars to pay for this last-mentioned work. At the time of the accident the foundation of the front wall had been started. The inner spring of the arch had been shored up on jack screws, and there was a space between it and the area wall upon which the plaintiff was at work.

The plaintiff was sent to work at the place where the accident happened, not by the defendant, but by Samuel Batten, foreman for his brother John. He had been at work only a few minutes when the arch fell upon him. It appeared that some work had been done at the place in question by a colored man named Dan, in taking down a wall, and there was some evidence tending to show that his work had weakened the support of the arch, but there is no evidence as to the relation of Dan to the defendant, except that he had been working two or three days and that the defendant saw him working there. The only other evidence is that of Samuel Batten, who testified: " Q. Did you see anybody removing this old wall, the vault; if so, who removed it? A. A colored man belonging to Mr. Pugh, I think. His name was Dan." This was not sufficient to raise a presumption that Dan was in the employment of the defendant. He might have been there in the employment of any other contractor on the building, or as an independent contractor, and it would not have been proper to permit the jury to speculate and

find on such slight evidence that he was in the employ of the defendant. This position is emphasized by the fact that at the close of the evidence the attention of plaintiff's counsel was called to the fact that he had failed to show any connection between Mr. Pugh and the colored man, except by the statement of one witness, that the colored man belonged to Mr. Pugh. There was no attempt to supply the omission.

But the main question in the case arises on the correctness of the ruling of the court on the motion to nonsuit, as follows: "The Court: How do you claim, Mr. Beecher, that you can recover upon your pleadings? You do not set forth that the relation of master and servant existed between the plaintiff and the defendant. After argument, complaint dismissed. Exception."

The appellant's counsel contends that this was error, and that the plaintiff could recover upon either of two theories: "(a) Because of the omission to perform a legal duty, and (b) Because of the commission of a lawful act in a careless manner." This statement is taken evidently from the opinion in *Nicholson* v. *Erie Railway Co.* (41 N. Y. 525, 529), where it was said: "Negligence consists in the commission of some lawful act in a careless manner, or in the omission to perform some legal duty, to the injury of another. It is essential to a recovery in the latter case to establish that the defendant owed at that time some specific, clear, legal duty to the plaintiff or the party injured."

The allegation of the complaint is that the plaintiff was working on the premises with the permission of the defendant. We must assume that the plaintiff, who was in the employ of Batten, an independent contractor doing work on the building, was lawfully there. The defendant knew of his presence in the service of his employer. What duty then did the defendant owe him? Certainly, not the duty of securing him against injury from any negligence of his own employer.

There is a clear distinction between active and passive negligence, between negligence of commission and negligence of omission. It is recognized in *Larmore* v. *Crown Point Iron Co.* (101 N. Y. 391). It was also said in that case (p. 394): "There is no negligence in a legal sense which can give a right of action, unless there is a violation of a legal duty to exercise care."

The owner of real estate owes to a person employed on his premises in the service of an independent contractor a duty to commit no act of active negligence. I cannot find any authority which holds him liable for any passive negligence. The only evidence of any negligence on the part of the defendant which can be predicated in this case is that he did not furnish the plaintiff a safe place for his work. For any such omission the defendant is not liable to one in the service of a third person where the evidence shows no act of affirmative negligence on the part of the owner.

In *Splittorf* v. *State of New York* (108 N. Y. 205) it was held that the owner of premises owes no duty of active diligence to one going thereon either with or without license or permission and merely for his own convenience, and is not liable for injuries resulting from an omission to keep a structure thereon in proper repair.

In addition to this, the evidence shows the following facts : Batten had commenced laying some of the foundations for the wall of the building ; he had built the retaining wall along the bank at the inner side of the arch ; Dan had completed his work in placing two or three needles or jack screws under the spring of the arch ; Batten did not think the work secure and directed Dan to get longer needles ; these needles weighed 150 pounds each, and one of Batten's men, by his directions, assisted Dan to carry them to the place where they were set. It is simply incredible that Dan could have set these jack screws in their places under the wall alone and without assistance. The only inference from the evidence would seem to be that Dan was making the change, not under the directions of the defendant, but under those of Batten, the foreman, and for this act the defendant is not liable. (*Wyllie* v. *Palmer*, 137 N. Y. 248 ; *Higgins* v. *Western Union Telegraph Co.*, 156 id. 75.)

Under these circumstances I think the nonsuit was properly granted and that the judgment should be affirmed.

BARTLETT, J., absent.

Judgment and order unanimously affirmed, with costs.