CASE 9.—ACTION  BY  AARON  SMITH'S  ADMINISTRATOR
AGAINST  THE  LOUISVILLE  &  NASHVILLE  RAIL-
ROAD  COMPANY  FOR  CAUSING  THE  DEATH  OF
PLAINTIFF'S  INTESTATE.—May 20, 1909.

# L. & N. R. R. Co. v. Smith's Admr.

Appeal from Hardin Circuit Court.

WEED S. CHELF, Circuit Judge.

Judgment for plaintiff, defendant appeals.—Reversed.

1. Master and Servant—Injuries to Third Persons—Independent Contractor—Relation.—The employer of plaintiff's intestate contracted with defendant railroad to do sundry masonry work for it for two years at stipulated prices, and was engaged under the contract in excavating for a new culvert when intestate was killed. The company had put in false work to support the track while the culvert was being built, and kept a man there to see that the track was safe for passing trains, but had no control over the contractor as to the manner of doing the work, except to see that it was according to the specifications furnished him, and he employed and controlled his workmen, either personally or through his foreman. Held, that intestate's employer was an independent contractor, and not an employe of the railroad company.

2. Master and Servant—Independent Contractors—Work Wrongfully Prosecuted.—An employer is not relieved of liability by employing an independent contractor to do work where the statute requires the employer to do the work in a certain manner, or where it is contrary to law or creates a nuisance.

3. Master and Servant—Independent Contractor—Contract Duty of Employer.—An employer can not relieve himself from liability for injuries resulting from the prosecution of work by employing an independent contractor to do it, where the undertaking is a matter of contract, imposing upon the employer a fixed duty.

L. & N. R. R. Co. v. Smith's Adm'r.

4.  Master and Servant—Independent Contractor—Natural Consequences of Work.—If work is of such a hazardous nature, or the place where it is prosecuted is so near other property, that injury may reasonably be expected to result from doing it, even though done in a reasonably careful manner, the employer can not relieve himself from liability for injuries resulting therefrom by employing an independent contractor to do the work.

5.  Master and Servant—Independent Contractor—Liability.—If an independent contractor, employed by a railroad company to excavate for a culvert, failed to properly slope the sides of the excavation, so that one of his workmen was injured by the dirt caving in, the contractor alone would be liable therefor.

6.  Master and Servant—Independent Contractor—Actions—Sufficiency of Evidence—Hazardous Nature of Work.—In an action against a railroad company for intestate's death while employed by an independent contractor, who was engaged in putting in a culvert for the company when intestate was killed by dirt falling in upon him, evidence held not to show that the construction of the culvert was necessarily of such a hazardous nature that injury might have been expected to result therefrom, so as to render the company liable therefor.

7.  Master and Servant—Independent Contractor—Work Done in Exercise of Special Franchise.—A railroad company can not relieve itself from liability to its servants operating trains for injuries resulting from work done upon its track by employing an independent contractor to do the work.

8.  Master and Servant—Independent Contractor—Employer's Liability—Construction of Contract.—Where a railroad company employed an independent contractor to construct a culvert under its tracks, it would not be liable for injuries to a workman of the contractor sustained in doing the work; it not being of such a hazardous nature that injury might reasonably be expected to result therefrom.

LOUIS A. FAUREST for appellant.

BENJAMIN D. WARFIELD and CHAS. H. MOORMAN of Counsel.

QUESTION DISCUSSED AND AUTHORITIES CITED.

1. A peremptory instruction should have been given to find for the Louisville & Nashville Railroad Company, because:—

(1) If Smith's death was the result of negligence, it was that of Taylor, and Taylor was an independent contractor, for whose

L. & N. R. R. Co. v. Smith's Adm'r.

negligence appellant is not liable. Bush, &c. v. Grant, 22 Rep. 1766; Robinson, &c. v. Webb, 11 Bush, 465; Salliotte' v. King Bridge Company, 112 Fed. Rep., 378, 65 L. R. A. 620; Rogers v. Florence R. Co. (S. C.), 39 Am. & Eng. R. R. Cases, 348; Miller v. Moran Bros. Co. 1 L. R. A. (N. S.), 283; Good v. Johnson (Colo.), 88 Pac., 430, 8 L. R. A. (N. S.), 896; Uppington v. New York, 165 N. Y., 22, 53 L. R. A. 530; Blumb v. City of Kansas, 84 Mo. 112, 54 Am. Rep. 87; Schipp v. Pabst Brewing Co., 64 Minn. 22; L. & N. R. R. Co. v. Tow, 23 Ky. Law Rep. 409; Powell v. Construction Co. (Tenn.), 17 Am. St. Reps. 925; Funk v. Mo. Furnace Co. (Mo.), 55 Am. Reps. 376; Pack v. New York, 8 N. Y. 222; Erie v. Caulkins, 85 Pa. St. 247; Clark v. Hannibal, &c., R. R. Co., 36 Mo. 202.

(2) Smith was especially employed by Taylor to work in the culvert, the character of the work and the dangers incident thereto were obvious at the time of his employment, and he assumed the risk thereof. Brown v. Electric Railway Co., 101 Tenn. 252; Labatt on Master and Servants, page 286; Chicago, M. & St. P. R. Co. v. Ross, 112 U. S. 377; Clark v. St. Paul & S. C. R. Co. (Minn.), 9 N. W. 581; Clifton v. C. & O. Ry. Co., 31 Ky. Law Rep. 431; Duncan v. Gernert Bros. Lbr. Co., 27 Ky. Law Rep. 1039; Wilson's Adm'r. v. Chess, Wymond & Co., 25 Ky. Law Rep. 1655; McCormick Harvesting Machine Co. v. Leiter, 23 Ky. Law Rep. 2154.

2. The court erred in instructing the jury. Taylor was an independent contractor. It was his duty, and not that of the railroad company, to furnish his servants a reasonably safe place in which to work. The instructions were erroneous in placing this duty on the railroad company. Bush, &c. v. Grant, 22 Ky. Law Rep. 1766; Robinson v. Webb, &c., 11 Bush 465, and other authorities cited in support of motion for peremptory instruction. The master is only bound to use ordinary care to provide his servants with a reasonably safe place in which to work. Big Hill Coal Co. v. Abney's Adm'r., 125 Ky. 355; C. T. & T. Co. v. Graves' Adm'x., 104 S. W. Rep. 358. The instructions were erroneous in imposing on appellant too high a degree of care and in making it responsible for the negligence of Taylor—an independent contractor—affecting his employe. The instruction on punitive damages was improper, because (1) there was no evidence tending to show any gross negligence on the part of appellant; and (2) even if appellant were guilty of negligence, it could not be punished for the gross negligence of its co-defendant. L. & N. R. Co. v. Mount, 125 Ky. 593, 599, and cases there cited.

3. The court erred in refusing instructions asked by appellant. If the death of Smith was due to the manner in which the exca-

vol. 134—4

L. & N. R. R. Co. v. Smith's Adm'r.

vation was made by Taylor, appellant is not liable and the jury should have been so instructed. If the sub-works and bracings under the track were constructed in an ordinarily prudent manner, appellant is not liable even though the cave-in resulted, wholly or in part, from infirmities in the construction of said bracings and sub-works. The right of appellant to inspect the work and to see that it was done in accordance with the plans, and to see that the safety of trains passing over the track was not endangered, did not make Taylor the servant of the railroad. Robinson, &c. v. Webb, 11 Bush 465; Salliotte v. King Bridge Company, 65 L. R. A. 620; Rogers v. Florence Railroad Co., 39 Am. & Eng. R. R. Cases, 348, and numerous authorities.

4. The court permitted incompetent testimony to go to the jury on behalf of appellee, much of which was prejudicial to the rights of appellant.

5. The verdict of the jury is not supported by the evidence.

6. The damages are excessive, as is demonstrated by decedent's earning capacity and expectancy of life.

S. M. PAYTON for appellee.

POINTS AND AUTHORITIES.

1. Making an excavation under a railroad and walling it up for the support and maintenance of the track and the safety of the trains is the performance of a personal franchise duty that can not be delegated to another so as to relieve the railroad from responsibility for a disaster produced while executing the work which results in injury to a third party. Sec. 203, Ky. Constitution; I. C. Co. v. Shegogg, 31 R. 691.

2. An independent contractor is one who renders service in the course of an occupation, representing the will of his employer only as to the result of his work, and not as to the means by which it is to be accomplished. 1 Thompson on Negligence, Sec. 622 and Sec. 658; L. & N. v. Towe, 23 R. 408.

3. If an employer perform a part of the work and let the residue to another to be performed where, and so, that each must depend for his safety upon the other, the duty to exercise ordinary care and skill is mutual and reciprocal, and if injury result to a third party in the execution of the work, both will be liable, if the negligence of the one was contributory to that of the other. 1 Thompson on Negligence, 658-9; Butts v. Mackay Co. 147 N. Y. 715; Grand Trunk v. Cummings, 106 U. S. 700, Lawyers Co.-Op. Bk., 27 266; D. L. & N. Co. v. Stewart, 2 Met. 119; L. C. & L. Co. v. Cash, 9 Bush 720; and C. P. R. Co. v. Kuhn, 9 R. 729.

4. If one come upon the premises of another upon invitation or by reason of a contract based upon a valuable consideration the law raises an implied warranty against the proprietor that the place is reasonably safe and that he shall not be injured while there. Williams v. L. & N., 98 Ky. 247; and cases there cited; 1 Thompson on Negligence, Sec. 979, and cases there cited.

5. It is the personal duty of the master to provide the servant with a reasonably safe place in which to work so far as ordinary care can make it safe, and the servant assumes no risk of dangers of the place not known to him or which are not obvious or would be discovered by a cursory examination, and the servant has the right to assume that the place is reasonably safe. Ross Parris Co. v. Brown, 28 R. 813; Meade v. Ashland Steel Co., 125 Ky. 114; Wallace v. Bach, 30 R. 69; Wood v. D. C. D. Co., 31 R. 511.

6. If a servant be injured while executing an order given him by a superior notwithstanding many misgivings of his own as to the dangers to be incurred in the execution of the order, the servant will be relieved from the imputation of contributing negligence unless the dangers were so obvious that no one of ordinary prudence, situated as he was, would have obeyed the order and incurred the danger. Long v. Illinois Central, 24 R. 567, and cases therein cited; Cumb. Tel. & Tel. Co. v. Graves, 31 R. 972.

OPINION OF THE COURT BY JUDGE LASSING—Reversing.

While assisting in making an excavation under the track of the Louisville & Nashville Railroad Company near Nolan, Ky., Aaron Smith was killed by the earth's caving in upon him, and his administrator brought suit against said company and George Taylor, a contractor, for whom he was working, to recover damages for his death, on the ground that it was due to the negligence of the defendants, in that they failed to furnish Smith a reasonably safe place in which to work. The defendants filed separate answers. The railroad company denied negligence on its part, and pleaded that its co-defendant, Taylor, was an independent contractor, and alleged that, if the death of plaintiff's intestate was due to negligence, it

was that of his employer, Taylor, the independent
contractor, for which it was in nowise responsible.
Taylor denied negligence on his part, and sought to
shift the responsibility for the accident which resulted
in the death of plaintiff's intestate upon the railroad
company. Upon the issues thus joined, the case was
tried before a jury, which returned a verdict in favor
of plaintiff against the railroad company for $5,000.
The jury also returned a verdict in favor of the
defendant George Taylor. From the judgment pred-
icated upon this verdict, the railroad company is
appealing.

Several reasons are assigned why the judgment
should be reversed, but from the conclusion which we
have reached it is necessary to consider only one, to-
wit, whether or not the court erred in refusing to
peremptorily instruct the jury to find for the railroad
company on the ground that the decedent Smith was
an employe of defendant George Taylor, who was an
independent contractor, and for whose negligence, if
any, the railroad company was not liable. The evi-
dence shows that the railroad company had a contract
with its codefendant, Taylor, to do the masonry work
on the Louisville Division of its road for the years
1907 and 1908. This contract, which is in writing,
and signed by Taylor, though not signed by the rail-
road company, is as follows:

"We, the undersigned, hereby agree to be governed
by the following terms during the years of 1907 and
1908, for masonry work on the Louisville Division of
the L. & N. R. R.:

Stone, cut for bridge masonry:

Quarry face.................per Cu. Yd. $7 00
Dressed ...................per Cu. Yd.  7 50
Coping ....................per Cu. Yd.  8 00

| | | | |
|---|---|---|---|
| Scale and tank foundations in place | per Cu. Yd. | 5 | 00 |
| New box culverts, in place | per Cu. Yd. | 4 | 00 |
| Box culvert extensions and pipe headwalls | per Cu. Yd. | 4 | 50 |
| Paving | per Cu. Yd. | 2 | 00 |
| Of old stone | per Cu. Yd. | 3 | 00 |
| Dry Retaining Wall: | | | |
| Of new stone | per Cu. Yd. | 4 | 00 |
| Riprap | per Cu. Yd. | 2 | 00 |
| Under 30 Cu. Yds. | per Cu. Yd. | | 25 |
| Dry Excavation: | | | |
| Over 30 Cu. Yds. | per Cu. Yd. | | 30 |
| Water excavation | per Cu. Yd. | | 60 |

"Force account to be paid for excavating for, tearing out, and rebuilding bridge masonry, for pointing up and other slight repairs to masonry; for trucking materials from the station whenever necessary; for whatever other work not classified above. In addition, ten per cent. of entire force account is to be allowed for use of tools.

"Contractor to receive in addition to the above, twenty (20) cents per hour, as foreman, during actual time that any one of his gang is being paid for force account.

"Railroad Company to furnish sand and cement, and such transportation as it may deem proper.

    (Signed.)        "GEO. W. TAYLOR."

There was an old culvert near Nolan, Ky., which was not of sufficient size to carry off the water, and the railroad company notified Taylor that they desired him to put in a new double culvert, instead of the old culvert, at that place. After receiving this notice and the plans and specifications, he commenced the work, and had done a considerable part of the

excavating before the decedent Smith was employed.
On the morning of the day on which Smith met his
death, he applied for work to one H. F. Troutman,
who was Taylor's foreman in charge, and was em-
ployed by Troutman, and put to work immediately
after the noon hour. After he had worked some two
hours or more, the walls of the cut in which he was
working for the purpose of putting in the culvert
caved in, and smothered or mashed him to death.

From the evidence in this case it is clear that the
work of putting in this double culvert was being done
by the defendant George Taylor under the contract
above set out. The railroad company had no control
or authority over Taylor in the conduct of said work
further than to see that it was done according to the
specifications which it had furnished him. It is true
that during the whole of the time the work was being
done the company kept a man upon the ground for
the purpose of seeing that the railroad track was kept
safe for the passage of its trains over the place
where the excavating was being done. In fact, the
company before the work of excavating for the cul-
vert had commenced had its bridge foreman put in
certain false work to support the track. This false
work consisted of a bent of four legs resting on a
sill which was laid upon one of the walls of the old
culvert. Those legs were 12 inches square. On the
top of them was a cap 8 by 12 inches. On the top of
this cap rested four stringers, three of which were
16 inches square, and the other 8 by 16 inches. These
stringers extended 30 feet north from the bent and
30 feet south from the bent, and rested at the other
end upon the railroad embankment. Upon these
stringers the cross-ties rested. It was shown that
this was the usual and customary way for supporting

the track while work of this character was being done. It is likewise shown that, when so supported, the track was safe for the passage of trains. After this trestle or false work was put in by the company, Taylor took charge of the work of making the necessary excavation and building the culvert. In the conduct of this work he employed his own hands, and, either personally or through his foreman, directed the manner of making the excavation, and the company had no control whatever over his hands, or the manner in which the excavation was made, further than to see that its track was not endangered by the work. The method of making the excavation and the extent thereof were left entirely under the control of the contractor Taylor. He was paid by the yard for such excavating as it was necessary to do and for the stone work done by him. His written contract required him to remove the necessary earth, for which he received so much per cubic yard, and build the stone culverts, for which he was likewise paid so much per cubic yard; and while, throughout his testimony, he sought to shift the responsibility from himself to the railroad company, when asked the direct question what he had to do under the plans and specifications, he stated, "I had to make excavations such as would allow me to build the culvert according to the plans that were furnished," and he also said that the duties of Miller, the man whom the railroad company had looking after its interests there at that time, were to look after the safety of the track and trains, that Miller gave no directions except not to get too close to the cross bent, which supported the false work or trestle. About these facts there is practically no dispute in the evidence, and they clearly show that the contractor Taylor was an independent contractor. The evidence fur-

ther shows that Taylor was possessed of sufficient skill and ability to enable him to properly carry on this work. In fact, it shows that he had much experience in putting in railroad culverts and doing railroad bridge masonry. It being shown that Taylor was doing this work as an independent contractor, and that he possessed the requisite degree of skill to properly carry it out, the railroad cannot be held answerable for the injury to decedent, unless, as is contended by counsel for appellee, this was a class or character of work which the railroad company could not let to an independent contractor and relieve itself from liability by so doing.

There are certain well-defined cases where, from the nature of the undertaking or the character of the employment, an employer cannot relieve himself from liability on the ground that the work was done by an independent contractor. These cases for convenience may be grouped into five classes: (1) Where a statute imposes a duty upon the employer to perform the work in a given manner; (2) where the undertaking is a matter of contract, imposing upon the employer a fixed duty; (3) where it is contrary to law; (4) where it creates a nuisance; and (5) where, from the nature and surroundings of the work proposed, its execution is necessarily attended with such hazards as that injurious results may reasonably be expected to follow.

The case under consideration, if it comes within any of these classes, clearly belongs to the fifth class. Where one undertakes to do upon his property that which is necessarily dangerous to adjacent property, he can not excuse himself from liability to such adjacent property owner for any injury that might result from the work undertaken, even though it be done by

an independent contractor. In such cases, and in cases where the employer is held responsible for injuries resulting to third persons by reason of the hazardous nature of the work undertaken, the responsibility is made to rest upon the employer only because of the fact that the undertaking is in itself so hazardous and dangerous that, though prosecuted with care, injurious results may be expected to follow. There is, at least, an apparent lack of uniformity in the decisions of courts of last resort upon this question, and while it would seem from a cursory examination that different courts have adopted widely different rules in determining the liability of employers for damage done in the conduct of work by independent contractors, a careful analysis of the various opinions of the different courts shows that the reason for the rule in each particular case is the same, to wit, if the work to be done is of such a hazardous nature, or its proximity to other property is such that injurious results may reasonably be expected to follow its prosecution, even though conducted in a reasonably prudent and careful manner, then the employer cannot excuse himself from liability for an injury that may result therefrom, even though the work be done by an independent contractor. Familiar illustrations of this rule are furnished by those undertakings where blasting is required to be done or fireworks are used. In all cases where blasting is to be done upon property so near to other property that, no matter how carefully the work is done, injurious results may be expected, the employer has invariably been held liable for any damage that has resulted; and, where displays of fireworks have been given for pay, the owner of the property has been held responsible for any resulting damage, even though the exhibition was

conducted by an independent contractor. But, on the other hand, in cases of this character, where the nature of the work in which the blasting is required to be done is such that injurious results may not be reasonably expected, where the work is carefully done, then the employer has been held to be not liable. Most business enterprises are attended with some elements of hazard; and, while the work of digging ditches and making excavations similar to that which was required in building the culvert in the case under consideration is not necessarily dangerous, it has connected with it, of course, some elements of danger or hazard; but where the work is properly conducted, and the banks or sides of the cut or ditch are properly sloped, the attendant dangers are minimized.

Without disputing the correctness of this proposition, counsel for appellee argues that in the case at bar the dangers were greatly increased by reason of the fact that trains were run over the track above the ditch at such a rate of speed as to jar the earth and cause it to crack and become much more liable to cave in. There is evidence which shows that by the passage of trains overhead the earth was caused to vibrate and tremble, and that, following the passage of trains, the earth did crack more or less while the excavation was being made. The cave-in occurred from the north side of the cut or ditch. There was nothing to have prevented the contractor from giving this cut on that side as much slant or slope as he desired, and he testifies that he had the right to give the bank such slope as, in his judgment, would enable him to properly, safely, and expeditiously carry on the work; and that, exercising this judgment, he gave to that wall of the cut what he regarded a sufficient slope—such slope as was usually given the walls of

ditches or cuts of this character. Just what caused
the cave-in is not known. Whether it was due to the
loosening of the earth in the fill, caused by the passage
of trains, or to the fact that the earth of which this
cut was made had less cohesive powers than is usually
found, cannot be known. It is certain that it cannot
be chargeable to any defective condition of the false
work put in by the railroad company to support the
track overhead, and it is also equally certain that the
likelihood of its happening might have been lessened
had the sides of the cut been given a greater slope;
but, inasmuch as it is shown that the slope given to
this cut was such as is usually given in making exca-
vations of the size, depth, and character as that
called for in the case under consideration, the acci-
dent may more properly be considered as one which
usual prudence, care, and foresight could neither have
anticipated nor avoided.

The making of any excavation is necessarily
attended with some danger. The sides of the ditch
or cut are liable to slip or fall in. The extent of this
liability is dependent upon many circumstances—the
amount of moisture in the ground, the character and
condition of the soil, the slant of the walls, or depth
of the cut. All of these matters have to be taken into
account. So likewise in making an excavation under
the track of a railroad, where the ground on either
side is subjected to heavy pressure by the passage of
trains over it, the liability that the sides will slip or
cave in is increased. These matters are common
knowledge to those engaged in that character of busi-
ness, and in the prosecution of the work are necessa-
rily taken into account and consideration. If the con-
tractor failed to give the side of the cut the proper
and necessary slope, the fault was his, and not that of

his employer, and, if such failure caused the cave-in which resulted in the killing of appellee's intestate, the contractor alone is answerable therefor. The only difference between excavations made beneath a railroad track and elsewhere is that the sides of the cut under the railroad track are subjected to pressure when trains pass overhead. The fact of this pressure must be and necessarily is taken into consideration in determining the slope that should be given to the sides of the cut. It is a known quantity, and can be dealt with as any other known element that tends to increase the hazard of the business.

Of course, a very different question would be presented if by reason of the prosecution of this work a train had been derailed, and a passenger injured; for in such case the duty of the company to furnish the passenger with safe passage is such that it could not excuse itself for any negligent act on the part of an independent contractor that in any wise impaired the safety of its track, but no such question as that is presented here. No such relation existed between deceased and the railroad company. The railroad company was under no duty to deceased, since the relation of master and servant did not exist between them. The duty which it owed to the traveling public to maintain its track in a safe condition for the passage of its trains did not in the least obligate it to look out for the safety of deceased, who was an employe of an independent contractor engaged in a separate and distinct undertaking. The false work which the railroad company put in to support its track while the excavation was being made and the new culvert laid in no wise contributed to produce the cave-in. It was not intended that it should in any wise contribute to the safety of the place where deceased was

working further than to prevent trains from falling into the excavation. That the false work was amply sufficient for the purposes for which it was used is abundantly shown by the record. The weight of the false work and of the passing trains which it sup-supported did not rest upon the earth where the cave-in occurred, but some distance beyond that; nor did the cave-in occur beneath the railroad track, but to one side rather.

With the knowledge on the part of the railroad company that the passage of its trains must necessarily jar the earth, and perhaps cause the sides or walls of the excavation which was being made to crack, can it be said that the making of this ditch was necessarily of such a hazardous nature that injury might be expected to result therefrom, even though the work was done in a careful and prudent manner? We think not; for, while there is always more or less liability that the earth from the banks or sides of a ditch will fall or cave in, this liability may be greatly reduced if not entirely overcome by giving the banks a proper and reasonable slope. The greater the slope, the greater the liability of a cave-in is lessened. The contractor having in charge this particular work was a man of large experience in that business. He and his bosses under him, and other witnesses who testified, stated that this work was being done in a reasonably prudent manner, and that, when so done, a cave-in might not reasonably be expected to occur unless it should rain and moisten the earth. Since it did not rain, the necessity for giving the sides of the cut additional slope or slant was obviated in the judgment of the boss in charge. Work of this character is being constantly prosecuted by railroad companies. Excavations are being made in almost innumerable ways

in the prosecution of many kinds and characters of work. The digging of foundations for buildings, ditches, or drainage, cisterns and cellars, and, in fact, the making of any hole in the ground for any purpose, has connected with it all the elements of hazard which were connected with the case under consideration save and except the pressure caused upon the earth by the passage of the trains overhead. The employer who engages an independent contractor to dig a ditch occupies a very different position toward the employes of such independent contractor from that which he occupies toward adjacent property owners or third parties, to whom he owes some duty. For instance, if the excavation is to be made so close to the property of another as to deprive such property owner of his lateral support, the employer cannot excuse himself because the work was done by an independent contractor.

And again, where an employer, a common carrier, is having work done about or upon its track, it cannot relieve itself from responsibility to its passengers or its servants in the operation of its trains by having such work done by an independent contractor. Such duties, statutory or contract, as an employer owes to third persons, cannot be destroyed by the intervention of an independent contractor. A case might be presented where from the nature of the undertaking the employer would be responsible for any injury that might result to the employes of the independent contractor under him in the prosecution of the work, but the case under consideration is not such. The railroad company was under no duty whatever to deceased, and cannot be held answerable for his injury and death. The record in this case clearly presents every element which was required to establish the

fact that George Taylor, the employer of deceased, was an independent contractor. The written contract shows that he was such; and, while it would appear from certain isolated questions and answers given in his testimony that he was working under the supervision and direction of other employes of the railroad company, when his entire testimony is considered, it is evident that such was not the case. Being an independent contractor, and the work which he was doing not being of such a hazardous nature as that it could not be let to an independent contractor, the trial court erred in overruling the motion of the defendent railroad company for a peremptory instruction.

For this reason, the judgment is reversed, and the cause remanded for further proceeding consistent with this opinion.