[No. 35031. *En Banc.* March 2, 1961.]

EBBA MURK et al., *Appellants*, v. LOUIS ARONSEN et al., *Respondents.*[1]

*Roy E. Jackson* and *Daniel G. Goodwin*, for appellants.

*Brethorst, Fowler, Bateman, Reed & McClure* and *Roy J. Moceri*, for respondents.

ROSELLINI, J.—The plaintiff Ebba Murk was injured on premises belonging to the defendant Congregation Bikur Cholim, where she had been employed by the Aronsens to

[1] Reported in 359 P. (2d) 816.

work as a banquet waitress. At the close of all of the evidence, her suit against Congregation Bikur Cholim was dismissed and a judgment against the defendants Aronsen was directed in her favor. She assigns error to the action of the court in dismissing her case against the owner of the premises.

The evidence disclosed that Congregation Bikur Cholim, hereafter referred to as the respondent, had employed the Aronsens, doing business as the Aronsen Catering Service, to prepare and serve a banquet at the respondent's synagogue. The respondent was to furnish the kitchen and equipment, and the Aronsens were to purchase, prepare and serve the food. They were given possession of the kitchen for this purpose and were not to be under the control of the respondent. They hired their own employees, among whom was Ebba Murk, to assist in the preparation and serving of the dinner. It was also understood that they were to clean the kitchen. The respondent did not supervise nor interfere in any way with the performance of this contract by the Aronsens.

While preparing chicken at the kitchen stove, Louis Aronsen spilled cooking grease on the floor. The condition of the floor was called to his attention by at least two employees, but nothing was done about it. After Ebba Murk had finished her duties as waitress, she ate her dinner and then prepared to leave. The employees understood they were to use the back door; this necessitated their passing the cooking stove. Ebba Murk's duties had kept her in other parts of the kitchen, and she had not seen the grease upon the floor. While walking past the stove, she slipped, fell, and suffered the injuries for which she brought this action.

It is clear from the evidence that the Aronsens were independent contractors and not employees of the respondent. The plaintiffs do not dispute this fact, but they contend that because Mrs. Murk was on the premises for a business purpose, she was a business invitee to whom the respondent owed a nondelegable duty to provide a safe place to work. No authorities are cited which sustain this position.

The general rule is that the servants of an inde-

pendent contractor must look to him, and not to the person with whom he has contracted, for injuries which they receive through his fault or negligence. *Gambella v. John A. Johnson & Sons,* 285 App. Div. 580, 140 N. Y. S. (2d) 208 (1955); *Humble Oil & Refining Co. v. Bell,* (Tex. Civ. App.) 180 S. W. (2d) 970 (1943); *Campbell v. Jones,* 60 Wash. 265, 110 Pac. 1083, 20 A. L. R. 671 (1910); *Louisville & N. R. Co. v. Smith's Admr.,* 134 Ky. 47, 119 S. W. 241 (1909); *Cole v. Louisiana Gas Co.,* 121 La. 771, 46 So. 801 (1908); Annotation, 44 A. L. R. 932.

 It is well settled that the principal employer owes to the servants of contractors and subcontractors, employed to perform work on his premises, the duty of not endangering them by his own negligence or affirmative act, but there is no principle under which there rests upon him any obligation to protect them from the negligence of their masters or of their fellow servants. *Douglass v. Peck & Lines Co.,* 89 Conn. 622, 95 Atl. 22 (1915); *Callan v. Pugh,* 54 App. Div. 545, 66 N. Y. Supp. 1118 (1900); *Burke v. Ireland,* 26 App. Div. 487, 50 N. Y. Supp. 369 (1898); 35 Am. Jur. 588, § 159; Annotation, 44 A. L. R. 932.

Mrs. Murk was not an employee of the respondent nor was she the kind of business invitee to whom an owner owes a nondelegable duty to provide a safe place to work. The kitchen was not an inherently dangerous place; and her injuries were not caused by a hidden danger of which the respondent was aware and of which the Aronsens were ignorant. Neither is this a case involving a statute or ordinance which places a nondelegable duty on an owner or general contractor. Were any of these facts present, a different question would be involved. Under the applicable rules which we have stated, the respondent cannot be held liable for Mrs. Murk's injuries.

 Ebba Murk's accident occurred as a result of the negligence of her employers, at a place which was under their control according to their contract with the respondent and where her employment required her to be at the time of the accident. The respondent was in no way responsible for this negligence, had no reason to be aware of the con-

dition of the floor, and owed to Mrs. Murk no duty to remedy it or give her warning. The challenge to the sufficiency of the evidence against the respondent was therefore properly sustained.

The judgment is affirmed.

MALLERY, HILL, WEAVER, and OTT, JJ., concur.

FOSTER, J. (dissenting)—The plaintiff, Ebba Murk, while employed by the respondent caterer, an independent contractor, Louis Aronsen, was injured during a banquet at the synagogue of the Congregation Bikur Cholim in Seattle. There was a verdict against the respondent Aronsen, but the court granted the motion of the Congregation Bikur Cholim to dismiss the appellants' case. From the judgment dismissing the action against the respondent Congregation Bikur Cholim, the plaintiffs appeal.

Appellant Ebba Murk slipped on some grease which had been spilled in the cooking of the dinner. There was no dispute that the grease was spilled by Aronsen, the independent contractor, and that he negligently failed to remove it, but this does not exclude the respondent owner's concurrent negligence. If respondent owner also had a responsibility to keep the kitchen floor safe, then, upon notice of the unsafe condition, the duty arose for respondent to clean the spot, and its failure to do so would constitute negligence concurring with that of the independent contractor in causing the injury. All of those whose negligence concurs to cause damage are liable therefor.

The cases upon which the court's opinion is predicated are, therefore, not apposite. The principle of those cases applies where the independent contractor was the only actor and the owner was not negligent. But here, the issue is the owner's negligence.

The question for our decision is: Was there sufficient evidence of respondent's negligence to make a jury question? If, from the evidence, a jury could reasonably have determined that respondent did not relinquish all rights of occupancy and control over the kitchen but retained some rights and responsibilities therein, it follows that respondent

remained an occupier as to those premises, and that appellant Ebba Murk, the employee of the independent contractor, was respondent's invitee to whom it owed a duty of reasonable care.

The court decides:

". . . They [Aronsens] were given possession of the kitchen for this purpose and were not to be under the control of the respondent. . . . It was also understood that they were to clean the kitchen. The respondent did not supervise nor interfere in any way with the performance of this contract by the Aronsens."

It is familiar law that, on a motion by a defendant challenging the sufficiency of the plaintiff's evidence, the evidence is to be taken in the light most favorable to the plaintiff together with all favorable inferences.

The evidence respecting the contract under which Aronsen, the independent contractor, was to prepare the food for the banquet in question is extremely unsatisfactory. Although Aronsen was a party and was represented by counsel, he did not testify nor was his absence explained. The only other witness with testimonial knowledge of the terms of the contract was a member of the congregation's committee, Mrs. Bertha Sulman. Her testimony is:

"Q. Now, when you called him the first time before he came down to the synagogue, what did you actually ask him to do at that time? A. To save the date for us. Q. Just to save the date for you? A. Yes."

The only other occasion when the parties met, was shortly before the banquet in question. With respect to that meeting, Mrs. Sulman testified as follows:

"Q. Did any other member of your church assist you in arranging to have Mr. Aronsen? A. Yes. Mrs. Katsman came down Sunday, the day that we met him at the synagogue and she was there when we prepared, gave him the menu."

That is all of the testimony in the record respecting what the contract was. On cross-examination, Mrs. Sulman was asked a leading question by the attorney for the congregation as follows:

"Q. Now, Mr. Aronsen was also supposed to, in addition to serving, was supposed to clean up afterwards?"

and stated her conclusion to the question in the following words:

"A. Yes, everything—he has to take care of the whole kitchen."

In my view, this scarcely justifies a judicial determination as a matter of law that, under the contract of employment, Aronsen had exclusive control and possession of the kitchen.

Mr. Nathan Etkin, the secretary of the respondent congregation, testified as follows:

"Q. In other words, Mr. Rubinstein [the sexton] and the building exercised control over everyone who was in that building on March 3? A. That is right. Q. And to your knowledge Mr. Rubinstein and the caretaker did exercise control over that building on March 3, 1957? A. Yes, to my knowledge."

and, further, that the sexton's duty was as follows:

"A. Yes, it is his duty to see that the building is clean and it is proper to use, yes, that's right. Q. And that it is safe in all respects for whoever comes in and out of there? A. Yes. Q. That is his job? A. That is his job there."

Mr. Etkin further testified that he had no knowledge that anyone in the congregation had given any orders to Mr. Aronsen to see that the floors were clean. Under the evidence, the control of the kitchen at the time and place in question was open to different inferences. The jury might have found upon the conclusions testified to by the witness Bertha Sulman in response to the leading questions of the congregation's counsel that the independent contractor, Aronsen, had control. On the other hand, the jury might have found from the testimony of the secretary of the congregation that Aronsen did not have control. Upon this point, the jury might have found either way.

The court declares that the employee of an independent contractor is not an invitee of the occupier of the premises. But the law has been settled to the contrary for nearly one hundred years. *Indemaur v. Dames*, L. R. 1 C. P. 274, 35 L. J. C. P. 184, affirmed L. R. 2 C. P. 311, 36 L. J. C. P. 181

(1866), decided that an employee of an independent contractor is, with respect to the occupier, an invitee to whom the occupier owes a duty of reasonable care. An independent contractor supplied defendant occupier with a gas regulator. Part of the contractor's service was to test the regulator, and, for that purpose, plaintiff, the contractor's employee, went upon defendant's premises where he was injured. It was argued that the plaintiff was at best a bare licensee or a guest, which argument was rejected as follows:

"We think this argument fails, because the capacity in which the plaintiff was there was that of a person on lawful business, in the course of fulfilling a contract in which both the plaintiff and the defendant had an interest, and not upon bare permission. . . ."

Since *Indermaur v. Dames, supra,* employees of independent contractors doing work on an occupier's premises have, without dissent, been classified as invitees.[2]

I am convinced that there was sufficient evidence for submission to the jury, and that the jury could reasonably have decided the respondent retained some rights and attendant obligations of occupancy. There was testimony from which it could reasonably be inferred that the independent contractor was responsible solely for preparing and serving the dinner and for the cleaning of the appliances and utensils involved, but not for the cleaning or safety of the other physical premises of the kitchen, including the floors, and that the general maintenance of the kitchen premises was the responsibility of respondent.[3]

---

[2]*Dobbie v. Pacific Gas & Electric Co.,* 95 Cal. App. 781, 273 Pac. 630; *Carr v. Wallace Laundry Co.,* 31 Idaho 266, 170 Pac. 107; *Sears, Roebuck & Co. v. Wallace,* 172 F. (2d) 802; *Gagnon v. St. Maries Light & Power Co.,* 26 Idaho 87, 141 Pac. 88; *Davis Bakery v. Dozier,* 139 Va. 628, 124 S. E. 411; *In re Wimmer's Estate,* 111 Utah 444, 182 P. (2d) 119; Prosser on Torts (2d ed.), 452, § 78; 2 Harper & James, The Law of Torts, 1478, 1481, § 27.12; 65 C. J. S. 514, 515, § 43 (4) (b); 26 Minn. L. Rev. 573, 605, Prosser, Business Visitors and Invitees.

[3]There is, as an example, the following colloquy:

"Q. And I am just trying to find out here as to whether or not during this period from ten o'clock in the morning when Mr. Aronsen took over or thereabouts up until this accident that night whether there was anybody from that church that was supervising or exercising any

The jury could properly have so found, in which event appellant was an invitee to whom respondent owed the duty of reasonable care.

There remains for determination whether there was sufficient evidence to sustain a finding that respondent breached its duty of care to appellant Ebba Murk. Did respondent have sufficient notice of the unsafe condition to charge it with the duty to clean the spot?

Although there was no testimony of actual notice of the condition, there is sufficient evidence of constructive notice[4] to sustain a verdict, from which notice arises the duty to clean the spot in order to comply with the standard of reasonable care.

In summary, it would be a different matter if the issue herein were one of the imputation of negligence. However, the negligence of the occupier as well as of the independent contractor was alleged. There was substantial evidence respecting the duty owed by respondent occupier, and its failure to comply therewith. There is no rule of law, as the court's opinion itself recognizes, denying recovery to an employee of an independent contractor for an injury occasioned by the negligence of the occupier of the premises. Consequently, the case against respondent should have been submitted to the jury. The challenge to the sufficiency of the evidence should have been overruled.

I would reverse and order a new trial.

---

supervision over that kitchen. Did you have anyone delegated? A. We don't have anyone delegated specifically to check on it there. I mean, Mr. Rubinstein is there and if there is something that is not safe, if he saw something that wasn't safe he would either remove it himself or tell Mr. Aronsen to remove it there. I mean, someone was around the whole time in the building. . . . Q. No, I wasn't asking you that. I was just asking if Mr. Rubinstein or anyone else during this particular period was delegated by the Congregation to see that the kitchen is safe for anyone. A. That is Mr. Rubinstein's duty to see that the kitchen is naturally safe and all that."

[4]There is testimony as follows:

"Q. Then, as I understand, during the time that this work was going on by Mr. Aronsen the church did not furnish or have anyone in supervision over that kitchen, is that correct? A. Well, I mean, *we were there. There was someone there the whole time,* I mean, you know, supervision is a—" (Italics mine.)

FINLEY, C. J., DONWORTH, and HUNTER, JJ., concur with FOSTER, J.

FINLEY, C. J. (dissenting)—Appellant has alleged, in substance, (1) that respondent owed her a duty to use due care in seeing that she had a safe place to work; and (2) that the duty was breached.

A challenge to the sufficiency of the evidence gives plaintiff the benefit of the evidence most favorable to her claims, together with all reasonable inferences therefrom.

The majority say that the Aronsens "were not to be under the control of the respondent"; that "It was also understood that they [the Aronsens] were to clean the kitchen"; and that "respondent did not supervise nor interfere in any way . . . " Having made these assumptions, it is a simple enough matter to follow the only path then available to the further point or conclusion that as a matter of law appellant failed to establish her case.

As Judge Foster points out, the matters to which the majority assume answers are the very things all the shooting is about. While it is possible for one to share the majority's conclusions on the evidence presented, it is also quite possible and reasonable to differ as to them. Under the circumstances, I think it is not for us to determine the terms of the catering arrangement, the relationships of the parties, or what responsibility the Congregation assumed. I am convinced that this case should be determined by submission of these issues to a jury.

---

April 4, 1961. Petition for rehearing denied.