MAY SHERIDAN, as Administratrix, etc., of ALBERT SHERIDAN, Deceased, Appellant, *v.* SYLVESTER ROSENTHAL and Another, Copartners Doing Business under the Firm Name and Style of ROSENTHAL & MOSKOWITZ, and Another, Respondents, Impleaded with MICHAEL CANNELLA and Others, Copartners Doing Business under the Firm Name and Style of CANNELLA BROTHERS, and Others, Defendants.

Second Department, July 25, 1923.

Negligence — action against owners of building and steel contractor to recover for death of workman who was killed by collapse of building under construction — owners of building were builders thereof and did not employ any one to supervise construction — architect's plans for steel work were not used — contractor for steel work used his own plans — said plans were not approved until construction was completed — suggestions made by building department were not carried out — both owners and steel contractor supervised construction — negligence may be predicated on failure to secure approval of plans and follow suggested changes — no defense to owners that steel contractor was competent steel architect and constructor — error to grant nonsuit.

In an action against owners of a building who were the builders thereof and a contractor who was engaged to do the steel work, to recover for the death of plaintiff's intestate who was killed by the collapse of the building when it was nearly completed, it appeared that the plans for the steel work which were drawn by the architect were not used; that the steel contractor furnished his own plans which were not approved by the building department until after the steel work had been completed; that between the date of the filing of the plans for the steel work and the completion of the work the building department suggested substantial changes in the plans, but these changes were not carried out by the contractor.

*Held*, that it was error for the court to grant a nonsuit since negligence on the part of the owners and the steel contractor may be predicated on the fact that the plans for the steel construction were not approved before the work was commenced and also on the failure of the steel contractor to carry out the suggestions made by the building department for the purpose of strengthening the construction of the building.

The owners of the building must be held to be jointly responsible with the steel contractor since they did not employ any competent supervising architect to supervise the construction and to make plans for the steel work, and they cannot shield themselves behind the claim that the steel contractor was a competent

steel architect and constructor of steel work since it was their supervision that the law exacted under the circumstances of the case.

The owners of a building in the course of construction which collapses when practically completed may be held liable for such collapse where they have not committed the supervision of the construction to an architect but have assumed to do the work themselves.

APPEAL by the plaintiff, May Sheridan, from a judgment of the Supreme Court in favor of the defendants, entered in the office of the clerk of the county of Kings on the 24th day of November, 1922, upon the dismissal of the complaint by direction of the court at the close of the plaintiff's case.

*Frank X. Sullivan* [*Theodore H. Lord* with him on the brief], for the appellant.

*William Dike Reed* [*William B. Shelton* with him on the brief], for the respondents Rosenthal and Moskowitz.

*Albert Conway* [*Benjamin C. Loder* with him on the brief], for the respondent Joseph Gaydica.

KAPPER, J.:

On November 29, 1921, at about one o'clock in the afternoon, a theatre building that was being erected on Bedford avenue in the borough of Brooklyn collapsed. Amongst other casualties, the plaintiff's intestate, who was a workman in the employ of a metal ceiling company and engaged on ceiling work, was killed. The defendants concede his death to have been caused by the collapse of the building. The building was called the American Theatre. The owners of the building were the defendants Rosenthal and Moskowitz. They were also the general contractors. Counsel for defendants Rosenthal and Moskowitz concedes that they were the " builders " of the theatre. The building was being erected on an irregularly shaped plot fronting one hundred feet on Bedford avenue and being about two hundred feet in depth running easterly to Spencer street. At the time of the collapse, the walls, all steel work, and the roof had been completed. The north and south walls of the building were constructed of brick of about twelve inches in thickness, with a height of about thirty-eight feet. The northerly wall, at a point about one hundred feet east of the Bedford avenue front, jogged to the north, making an " L " of about fourteen feet. Four steel trusses ran transversely from the southerly to the northerly wall on approximately the easterly half of the building. They were the roof supports. To support the westerly half of the roof of the building, a longitudinal truss was utilized, its easterly end resting at that point on the northerly wall where the jog or " L " began and its westerly end

attached to an upright steel column about nineteen feet high. This longitudinal truss was about seventy feet in length. Four additional transverse trusses rested upon this longitudinal truss on the north and the other ends on the southerly wall. The collapse of the building appeared to be as near a complete one as it is possible to describe. The entire roof, the trusses and girders were all down inside of the building. About forty or forty-five feet of the north wall seemed to have gone with the steel work. The roof all went in. The upright column had fallen together with that end of the longitudinal truss on which it rested.

The defendants, Rosenthal and Moscowitz, the owners and builders, employed an architect to draw the plans of the theatre, to furnish the steel drawings and file them in the building department. This architect, however, was not employed to supervise the erection of the theatre, nor did the defendants Moskowitz and Rosenthal employ any one for such supervision. The architect who drew the plans employed a firm of engineers to draw plans for the steel work, which included the roof, the trusses and the steel column supporting the longitudinal truss. These steel plans were filed in the building department of the borough of Brooklyn about the middle of August, 1921. The defendant owners, however, declined to use such plans and told the architect that they would not use them. Counsel for the defendant Gaydica admits that the defendant owners contracted with Gaydica for the furnishing and erection of the steel work. The defendant Gaydica furnished his own plans for the erection of the steel work. He employed Pluckham & Kavanagh to do the physical work of steel erection, under a verbal contract which was thereafter written under date of October 29, 1921, at which time the steel work was completed and the roof of the building was on; in fact, the roof of the building was completed on October 20, 1921. These men, so employed by Gaydica, commenced their work on October 3, 1921. Gaydica filed these plans with the building department on September 19, 1921. They were not approved until November 2, 1921, which was after all steel work had been erected. Intermediate the filing of the steel plans and their approval, various amendments were suggested by the plan examiner of the building department. Amongst these were sway-bracing between all the trusses; cross-bracing from the top of each truss to the bottom of the adjoining truss; knee-bracing or " struts " to run from the top of the upright column to the northerly wall; trusses to be tied to the walls, the requirement being that the heel of the trusses should be anchored into the wall on which they rested. Gaydica's plans, moreover, showed no detail regarding the base of the upright steel column, although the statement is

found in the plans, " Column shoes and column footings details to be filed later." In the amendments to the plans was suggested " Footings for columns. Column shoe details showing size and number of rivets." Gaydica was on the work from time to time. It is to be borne in mind that Gaydica gave his unamended and unapproved plans to Pluckham & Kavanagh before the latter started to work. Pluckham & Kavanagh were not to furnish any material. All material was delivered by Gaydica and all of it so furnished was put into the work by Pluckham & Kavanagh. There was evidence showing that no sway-bracing was put in every " bay," as suggested by the building department's plan examiner; that no cross-bracing of the roof trusses was installed as such amendments recommended; that there was no bracing of the upright column to the northerly wall, nor any " strut " furnished for such bracing, as advised or suggested by said amendments; nor was there any anchorage or fastening of the trusses as was also recommended. All these trusses were simply laid on the wall without any fastening. All of these omissions are claimed to have resulted from Pluckham & Kavanagh's literal conformance with the plans and use of material given them by Gaydica before the latter's plans were — *and as amended* — approved by the building department. The upright steel column, to which reference has already been made, was the only support for any of the overhead work excepting the exterior wall. It is apparent, therefore, that a great deal by way of supporting the overhead structure was dependent upon this column. Gaydica not only directed the placing of the trusses on the plates in the wall without fastening, but he also knew, or must be held to have known, that there was no fastening of the upright column at its base. Not only did Gaydica know this, but the defendant Moskowitz actually attempted to supervise such placing of it as was requisite to what was regarded as support. To support this column a concrete foundation was laid. The defendant Moskowitz measured from the wall to the point where the bottom of the column should rest. The foundation was found of insufficient height, and thereupon a steel plate was placed on top of the concrete after some sand and cement had been thrown on to get a smooth bearing. This material, called grout, was testified to as consisting of " more sand than there was cement." The plate was then put on top of this concrete within a space indicated by marks made by defendant Moskowitz. This column was in nowise fastened at its base.

The matters already adverted to suffice to state, as they do in brief outline, the salient features of the plaintiff's case. The learned trial justice, in granting the motion to dismiss, said:

" We may admit at the outset that there is somebody who was negligent, that someone's negligence caused this accident. I haven't been able to determine here who it was. If this building had been constructed by one person, or by a corporation, the collapse in itself would throw the burden upon the builder to explain why the building fell, and if the explanation wasn't satisfactory the jury would be authorized on that testimony to find against him. The owners employed, as far as the testimony shows here, competent contractors; competent concrete contractors, as far as the testimony shows; brick masons — competent; so that as far as the building of the foundations and the walls was concerned, they were done by competent contractors and masons. There is no testimony here to show that Gaydica wasn't a competent iron man. He furnished this steel work in accordance with plans furnished and approved by the department. It is true that the plans weren't approved until after the work was done. That may be open to some criticism somewhere or somehow; but in this case, especially in view of the fact that the steel work was in accordance with the plans, and the steel construction was done by another and independent contractor, Pluckham & Kavanagh, who are [not] parties to this action, I fail to see how the negligence in the construction could in any way be charged to any defendant in this case."

We concur with the learned trial justice that " somebody " was to blame for the death of the intestate. But we are unable to conclude that the nonsuit was proper. On the evidence the jury might have found that the collapse was due to negligence on the part of the steel contractor, and Rosenthal and Moskowitz, the owners and builders. Rosenthal and Moskowitz, as the general contractors who superintended or failed to properly superintend the construction of this building, may be held by a jury to be civilly liable for Gaydica's failure to postpone the work until approval of the amended plans. They may likewise be responsible, as equally so may be Gaydica, for such omissions in the construction as were advised by the building department. Whether these omissions were the precise cause of the collapse is not for us to say. It is for a jury to determine. They were presented as amendments to Gaydica's plans by the building department of the city, and it may well be that a jury would say that these omissions were factors of safety without which the building was rendered unsupportable and unsafe. Even had such omissions not been suggested and the erection had proceeded only after approval of Gaydica's plans on November 2, 1921, the mere approval of plans would not be a defense if the plans are proved to have been

faulty. The conegligence, if any, of the building department would not have exculpated those primarily responsible for faulty plans and the consequent erection pursuant thereto. But where, as here, the erection proceeded in accordance with unapproved plans which were not only subsequently amended in important respects but where the work was completed without complying with the amendments and before final approval of the plans, we think the circumstances so created do furnish some evidence wherefrom a jury may say in the absence of satisfactory explanation that the collapse of the building would not have occurred had the erection complied with the amendments required by the building department. Whether these defendant owners were competent to construct or supervise the construction of the building may be questioned. If they were not, their undertaking rendered them manifestly liable for faulty construction, because not having devolved the supervision upon an architect nor upon any one else who may be said to have been a responsible and competent supervisor of construction, they would be jointly responsible with Gaydica for the latter's acts and conduct. They could not shield themselves behind the claim that Gaydica was a competent steel architect and constructor of steel work. It was their supervision that the law exacted in the circumstances. The rule of non-liability of an owner of a building, who employs a competent and skillful architect, for faults or defects in design or plans has no application to the facts of this case. The owners here knew or should have known that Gaydica's plans were being carried out before their approval by the building department. Gaydica, of course, knew it. An owner of a building in course of construction which collapses when practically complete, injuring workmen engaged therein in finishing up the work, may be held liable for such collapse where he has not committed the supervision of construction to an architect, but has assumed to do the work himself. Such is the effect of the decision in *Burke* v. *Ireland* (26 App. Div. 487). The Court of Appeals in the case last cited (166 N. Y. 312) say: " In this case the owner was not competent himself to plan the building which he desired to erect. He was not competent to construct or superintend the construction. If he had attempted to do any of these things it may be that he could be held responsible for the results of the accident. It was his duty to devolve these things upon persons possessing sufficient knowledge and skill to accomplish the result intended, with safety to the workmen and the public." The question of the negligence of the defendants Rosenthal and Moskowitz and Gaydica on the record before us should have been submitted to the jury.

The judgment appealed from should be reversed on the law and a new trial granted, with costs to abide the event.

KELLY, P. J., JAYCOX, MANNING and YOUNG, JJ., concur.

Judgment reversed on the law and a new trial granted, with costs to abide the event.