**GUCCIARDI v. CHISHOLM et al.**

District Court, S. D. New York.

April 6, 1943.

Jacob Rassner, of New York City, for plaintiff.

Duncan & Mount, of New York City (John H. Galloway, Jr., of New York City, of counsel), for defendant Brewer Dry Dock Co.

GODDARD, District Judge.

The defendant, Brewer Dry Dock Company, makes this motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, dismissing the complaint as against it on the ground that there is no genuine issue as to any material fact; that it is entitled to judgment against the plaintiff as a matter of law.

The suit is for damages for personal injuries received by the plaintiff on July 14, 1941, when he fell from a scaffold on which he was at work scaling the exterior of the hull of the U.S.S. Williamsburg [ex the yacht Aras formerly owned by the defendant, Hugh J. Chisholm], which was undergoing repairs and alterations for conversion from a private yacht to a United States Naval Auxiliary in the defendant's Brewer Dry Dock Company, shipyards at Mariners Harbor, Staten Island, New York. Both Brewer Dry Dock Company [hereinafter referred to as Brewer] and Chisholm were included as defendants, but the case was discontinued as to Chisholm.

The complaint alleges that on July 14, 1941, the plaintiff was employed aboard the Aras; that Brewer was in control of the repair work on the vessel which required the use of scaffolds; that it had the management, control and supervision of the scaffolds and that due to Brewer's negligence in directing, causing and permitting the scaffold on which the plaintiff was working to be tied and secured to a portion of the vessel in such a manner as to make it dangerous, unsafe and insecure for the purpose intended, plaintiff was caused, without fault on his part, to fall therefrom and suffer injury.

Brewer's answer admits that it owned and operated the shipyard in which the Aras' conversion was going on; that as to the repair work on the vessel it was the general contractor and as to the work requiring the use of scaffolds the Union Engineering Corporation was its independent contractor. Brewer denies that it directed, caused or permitted the scaffold from which the plaintiff fell to be tied to a portion of the vessel or that it was in control of the scaffold or in control of the repair work requiring the use of scaffolds on the exterior, and denies the allegations of negligence on its part.

In support of the motion there have been submitted the pleadings, an affidavit of Hugh M. Thon, superintendent of the Brewer plant, the transcript of plaintiff's testimony upon his examination before trial on December 3, 1942; affidavit of plaintiff, and an affidavit of Frank A. Bull, attorney for Brewer.

It appears from the pleadings and the affidavits that Brewer entered into a contract with the United States Navy for the conversion of the yacht Aras into a Naval Auxiliary in accordance with the Navy's plans and specifications. Included in the work to be done was the scaling and painting of the exterior of the hull. Brewer contracted with the Union Engineering Corporation [later referred to as Union], an independent contractor, to do that part, Union to furnish all necessary scaffolding, gear and the rigging, which it did, and its employees, directed and supervised by Union's foremen, erected and maintained the scaffold. When the scaffold, which consisted of a heavy plank, was hung, plaintiff and a fellow workman fastened two ropes to the scaffold—one at each end—and led each rope through a port hole in the vessel's side and tied it to a ring bolt used to hold the port closed. The purpose of these ropes was to keep the scaffold close to the vessel's side. On the day of the accident, while the plaintiff was working on the scaffold, the ring bolt to which the forward line was tied, broke and the scaffold sprung away from the side of the vessel with the result that the plaintiff fell and was injured.

Plaintiff had been engaged in scaling and painting ships since 1911 and had been employed as a scaler by Union for a period of six months before the accident and was familiar with scaffolds and the rigging of them.

In an affidavit by the plaintiff he makes the general statement that "a ring bolt to which the scaffold had been tied under the direction of the defendant with its knowledge, consent and acquiescence, gave way." However, when he was examined before trial on December 3, 1942, by counsel for defendant, he testified:

"Q. Tell us how the plank was rigged up on the bow of the ship. A. I tied it up myself.

"Q. How could you reach the side of the ship? A. We put two lines, one on each side of the plank which ran down and were tied to a port or window.

"Q. What was the line that was tied to the window tied to? A. That was to hold the scaffold close to the ship's side. We tied each of these lines to a ring bolt used to hold the port closed, but the ports themselves were open to put the ropes through."

He also testified that he and Mazza, another employee of Union, put the plank into position and rigged the lines to the ring bolts under instructions from Union's foreman; also that his foreman told him to tie the lines to the ring bolt, and that no Brewer man helped. Foreman Pesce of Union, in a deposition taken by the plaintiff's attorney, testified that the plaintiff and the man who was working with him on the scaffold, rigged it up and no one from Brewer gave them any directions regarding it. Although Pesce's testimony has not been written out, counsel for defendant has submitted an affidavit that Pesce so testified, and I assume this is conceded to have been his testimony.

Accordingly, it appears that the plaintiff, employed by an independent contractor, was injured by falling from a scaffold as a result of the breaking of the ring bolt used to keep a port closed, to which he and his fellow employee had, pursuant to instructions from their own foreman, tied a rope to hold in place the scaffold upon which they were working. There is no genuine issue as to any material fact—only a question of law is presented.

The negligence, if any, which caused the injury was that of the plaintiff's employer, Union, which furnished the scaffold and whose employees directed and sup-

ervised its erection and fastening of the lines to the ring bolt. Union was an independent contractor with respect to the job of scaling and painting. Hexamer v. Webb, 101 N.Y. 377, 4 N.E. 755, 54 Am.Rep. 703. The general rule is that a general contractor is not liable for the negligent acts of its subcontractor, and the fact that it does retain some limited power of general supervision for the purpose of seeing that the work was being properly done by the subcontractor according to the plans and specifications, did not make it liable for the independent negligent act of the subcontractor. Moore v. Charles T. Wills, Inc., et al., 250 N.Y. 426, 165 N.E. 835; Slater et al. v. Mersereau, 64 N.Y. 138. A general contractor is not obliged to protect the employee of an independent subcontractor against the negligence of his own employer or that of a fellow servant. Burke v. Ireland, 26 App.Div. 487, 50 N.Y.S. 369; Callan v. Pugh, 54 App.Div. 545, 66 N.Y.S. 1118.

In Iacono v. Frank & Frank Contracting Co., 259 N.Y. 377, 182 N.E. 23, suit was brought against the owner of the premises upon which a building was being erected and the general contractor, to recover for the death of Iacono. Frank & Frank Contracting Co. was the general contractor for the erection of the building. Iacono was the employee of the plastering subcontractor and was injured through the tipping of a hod-hoist upon which he was riding. The hod-hoist had been erected at the direction of another subcontractor and, after that subcontractor had finished its work, was leased to the employer of the intestate. Under the lease, intestate's employer obtained absolute control of the hod-hoist and engaged its own engineer to operate it. Iacono's employer was in exclusive possession, operation and control of the hoist; neither defendant had caused its installation or supplied it for use of the subcontractors, nor had they operated it. The court dismissed the complaint, saying at page 381 of 259 N.Y., at page 24 of 182 N.E.: "We know of no duty resting upon an owner or a general contractor to inspect the machinery and tools furnished by a subcontractor, which that contractor exclusively possesses and controls; * * *. If the employer furnishes a ladder or a scaffold for the contractor's employees to work on, he must be careful to furnish a safe appliance [citing cases] but if the contractor furnishes such appliances, the employer does not thereby become responsible for their sufficiency. * * * Per Pound, J., in Hess v. Bernheimer & Schwartz Pilsener Brewing Co., 219 N.Y. 415, 418, 114 N.E. 808, 809; De Lee v. T. J. Pardy Construction Co., 249 N.Y. 103, 162 N.E. 599; Caspersen v. La Sala Bros., 253 N.Y. 491, 171 N.E. 754; Hooey v. Airport Construction Co., 253 N.Y. 486, 171 N.E. 752; Dudar v. Milef Realty Corp., 258 N.Y. 415, 180 N.E. 102, relied upon by respondent, hold nothing to the contrary. They express the principle that an owner, acting as general contractor in the construction of a building, and exercising general control and superintendence, owes to the employees of a subcontractor the duty of exercising reasonable care to make safe the places of work provided by him, and the ways and approaches to such places."

■ Counsel for plaintiff contends that Brewer is liable under Section 240, subdivision 1, Labor Law, Consol.Laws, c. 31, which reads in part: "A person employing or directing another to perform labor of any kind in the erection * * * of a building or structure shall furnish or erect, or cause to be furnished or erected for the performance of such labor, scaffolding * * * and other mechanical contrivances which shall be so constructed, placed and operated as to give proper protection to a person so employed or directed." This section does not apply to an owner or a general contractor performing work through an independent subcontractor. Iacono v. Frank & Frank Contracting Co., supra; Sweeney v. Spring Products Corp., 257 App.Div. 104, 12 N.Y.S.2d 72, affirmed 282 N.Y. 685, 26 N.E.2d 814.

■ Defendant's motion for summary judgment dismissing the complaint is granted. Settle order on notice.