Leonard **WALLACH**, Plaintiff,

v.

**UNITED STATES of America,**
**Defendant.**

United States District Court
S. D. New York.

June 20, 1960.

786

Jacob Rassner, New York City, for plaintiff.

S. Hazard Gillespie, Jr., U. S. Atty. for the Southern Dist. of New York, New York City, for defendant; Charles Beeching, Jr., Asst. U. S. Atty., New York City, of counsel.

DAWSON, District Judge.

This action, tried by the Court without a jury, is brought under the Federal Tort Claims Act, 28 U.S.C. § 1346(b), 2671 et seq., to recover damages in the amount of $250,000 for personal injuries allegedly suffered by the plaintiff as a result of a fall from a scaffold upon which he was working in the General Post Office at 241 Washington Street, Brooklyn, New York, on September 2, 1954. Plaintiff, a painter, was employed by an independent contractor, not a party to this suit, who was engaged by defendant, United States, to perform interior painting work in the Post Office. The issue is whether the United States is liable for injuries received by the plaintiff because of the collapse of a scaffold supplied and erected by the independent contractor. Suit was brought in this district because plaintiff resides here.

The Court finds the following facts:

On June 10, 1954 the General Services Administration, acting on behalf of the United States, entered into a contract with Phillip Lieberman, an individual doing business as M.R.M. Contracting Company, whereby Lieberman agreed to furnish all labor and material necessary to perform specified interior painting work at the General Post Office in Brooklyn in return for a consideration of $62,117.

On September 2, 1954, at approximately 3:30 p. m., plaintiff, an employee of said Lieberman, was working atop a 20 foot scaffold in the main workroom of the Post Office. The scaffold had been erected only shortly before plaintiff and a fellow worker ascended it, at the contractor's personal direction, to paint the ceiling of the room.

All of the materials used in the construction of the scaffold were supplied by the contractor, and Lieberman and his employees performed all of the work of erecting it. No employees of the defendant assisted in or interfered with the erection or maintenance of the scaffold, and the inspector appointed by the General Services Administration to supervise the progress of the work was not at the work site at any time on the day in question.

The scaffold consisted of wooden planks supported by straight ladders and "A" or trestle ladders. The straight ladder supporting the plank on which the plaintiff was standing leaned against a grating, apparently a permanent fixture of the building. The upper tips of the ladder rested upon thin strips which formed the grating and between which were large openings. The lower tips of the ladder rested on the floor of the room in such a position that the ladder formed an angle of about sixty degrees with the floor.

An expert witness called by the plaintiff testified that ordinarily the ladder should have been braced by "tying" it with a plank to the other ladder or by cleating it at its base with a strip of wood nailed to the floor. It was conceded that the ladder was either inadequately braced or not braced at all at the time of the accident.

Apparently as a result of the movement of plaintiff and a co-worker upon the planks forming the scaffold, the ladder shifted at its top along the face of the grating and toppled over to one side. The plank resting upon one of the top rungs of the ladder fell downward, and plaintiff plunged to the floor, his fall being momentarily arrested by striking a table or similar object from which he descended to the floor, landing on his back.

It is undisputed that plaintiff suffered definite injuries as a result of the fall. The medical testimony adduced at the trial demonstrates that plaintiff received a fracture of the transverse processes of the lower back at the level of L–1, L–2 and L–3, injury to some of the surrounding soft tissues, and a concussion. The medical testimony also discloses that the plaintiff now suffers from the aggravation of a pre-existing mental condition consisting of nervousness, preoccupation with a multitude of real or imaginary ailments and general lassitude, fatigue and listlessness, resulting in plaintiff's inability to do work at the present time. The expert neuro-surgeon called on plaintiff's behalf stated that the numbness and cramps in the right leg of which plaintiff complained at the trial, as well as plaintiff's other subjective complaints, were not referrable to any presently existing organic pathology, and that although the plaintiff's present inability to work was due to his mental condition, there was a good chance that plaintiff might, in five years or so, recover the ability to engage in a gainful occupation. The fractures of the transverse processes have healed completely, and there was no finding of muscle spasm, atrophy or other objective signs of physical disability.

The record discloses that plaintiff's medical expenses amounted to $2,800.

Under the terms of a formal Pre-Trial Order signed by the Honorable Sidney Sugarman of this District, dated April 20, 1960, a ruling was made that the issues to be tried in the subject action were:

(1) Was the plaintiff's injury proximately caused by any negligence of the defendant?

(2) Did any negligence of the plaintiff contribute to the injury and, if so, to what extent?

(3) What damages, if any, are due the plaintiff?

Taking up each issue in turn, plaintiff relies on two grounds to establish the negligence of the defendant:

(1) That work upon a scaffold is "inherently dangerous" such that the alleged duty to provide an adequate scaffold in the instant case could not be delegated by the defendant to an independent contractor, and that the United States, as owner of the premises, would be liable if the scaffold was inadequate;

(2) That under the provisions of the contract entered into between defendant and plaintiff's employer, Lieberman, the defendant retained control over the erection and use of the scaffold upon which plaintiff was working when the accident occurred, such that the Court could find as a matter of law that the negligence of the independent contractor was imputable to the defendant.

It must be acknowledged at the outset that the plaintiff must accept the status of Lieberman, his employer, as that of an independent contractor. As an employee of Lieberman he, of course, received Workmen's Compensation. Any assertion that plaintiff was an employee of the Government would be fatal to his suit, since his exclusive remedy for injuries suffered as an employee of the United States would be that provided for by the Federal Employees' Compensation Act, 5 U.S.C.A. § 751 et seq. Suit under the Federal Tort Claims Act would be specifically barred by § 757(b) of the Compensation Act.[1]

1. That section provides that:
"The liability of the United States or any of its instrumentalities under sections 751–756, 757–791, and 793 of this title or any extension thereof with respect to the injury or death of an employee shall be exclusive, and in place, of all other liability of the United States

On the issue of liability both sides concede that the law of New York is controlling on the questions presented.[2]

■ On the first question presented, the New York Court of Appeals has definitively held that scaffolding work is not *per se* inherently dangerous, in Hexamer v. Webb, 1886, 101 N.Y. 377, 4 N.E. 755, 759:

"It is also insisted that the work in question was intrinsically dangerous, and hence the party authorizing it would be liable, whether he did the work himself or let it out on contract. The answer to this position is that the work itself was not necessarily injurious or dangerous. It was merely necessary repairs or improvements for the benefit of the building, which, under ordinary circumstances, could be made without any serious results * * The act itself could only become dangerous and cause injury by some unforeseen circumstance, and the rule stated is not applicable."

Plaintiff urges that the Court of Appeals overruled Hexamer in Rohlfs v. Weil, 271 N.Y. 444, 3 N.E.2d 588, decided in 1936. That case involved the erection and use of a scaffold above a sidewalk from which a painter doing exterior painting of a building fell, striking and seriously injuring a pedestrian. The Court held that a general contractor could not escape liability for the use of a scaffold without barricades or warning signals by an employee of an independent contractor hired to do the painting work, on the ground that, under the circumstances, the scaffold constituted an obstruction to a public highway, and that a general contractor owed a nondelegable duty to the public to keep such a highway in a safe condition for travel while the work was in progress. The Hexamer decision was not disapproved, but rather cited for the proposition that the use of an exterior scaffold over a public highway is attended with danger to those using the sidewalk and that reasonable measures, such as barriers or warning signals, to prevent such danger, must be employed.

It seems clear that what the Court of Appeals in Rohlfs v. Weil, supra, was concerned with was a determination that any activity likely to interfere with public ways and thereby cause injury to pedestrians, was inherently dangerous, rather than a determination that scaffolds as such were inherently dangerous. Had the court been disposed to the latter view it could have held that scaffolds constitute inherently dangerous instrumentalities *per se*, and that would have ended the matter.

This very distinction was noted by the Appellate Division, Second Department, in Gambella v. John A. Johnson & Sons, 285 App.Div., 580, 140 N.Y.S.2d 208, decided in 1955, the court commenting that an accident to an employee of a subcontractor is not within the province of the authority of Rohlfs v. Weil.

Further support for the continued vitality of the position espoused in Hexamer is found in the cases which interpret the scope and effect of Section 240, subd. 1, of the New York Labor Law, McKinney's Consol.Laws, c. 31, which provides:

"1. A person employing or directing another to perform labor of any kind in the * * * painting * * * of a building or structure shall furnish or erect, or cause to be furnished or erected for the performance of such labor, scaffolding * * * and other devices which shall be so constructed, placed and operated as to give proper protection to a person so employed or directed."

It could presumably be argued that the statute represented a legislative de-

---

or such instrumentality to the employee * * * in any direct judicial proceedings in a civil action * * * under any Federal tort liability statute * * *."

2. In this regard, Section 1346(b), 28 U.S.C., provides that liability shall at-

tach "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." Therefore, the substantive law of New York must govern.

termination that scaffolding work is inherently dangerous and therefore non-delegable. However, the position expounded by the New York authorities is clearly to the contrary.

In the leading case of Iacono v. Frank & Frank Contracting Co., 1932, 259 N.Y. 377, 182 N.E. 23, 24, the Court of Appeals, without specific reference to the concept of inherent danger, held that the duties imposed by Section 240, subd. 1, supra, may be delegated to an independent contractor. Referring specifically to the statutory language, the court concluded:

"Concededly, neither defendant [the general contractor, and owner of the premises] was a person 'employing' another 'to perform labor,' for neither had any workman upon the job. Nor do we think that the Legislature, in using the phrase 'a person * * * directing another to perform labor,' had in mind an owner performing work through an independent contractor, or that it intended to impose liability upon such an owner for injuries arising from defective appliances supplied to his laborers by an independent contractor, as though the owner were a person 'directing' such laborers. Therefore we think that the statute has no application." 259 N.Y. at page 382, 182 N.E. at page 24.

See in accord, Sweeney v. Spring Products Corp., 1st Dept.1939, 257 App.Div. 104, 12 N.Y.S.2d 72, affirmed 1940, 282 N.Y. 685, 26 N.E.2d 814; Komar v. Dun & Bradstreet Co., 1st Dept.1954, 284 App.Div. 538, 132 N.Y.S.2d 618.

For the reasons set forth above, the Court concludes that the scaffold from which the plaintiff fell does not constitute an inherently dangerous instrumentality such that the defendant could not delegate its erection and use to an independent contractor.

Turning to the second ground on which plaintiff predicates his claim that defendant is liable for the injuries caused by the fall from the scaffold, both the most recent New York authorities as well as federal cases interpreting New York law are in accord that unless the general contractor assumes responsibility directly for supervising the method of work or giving express directions or assurances of safety, he has no responsibility for the manner in which operations are carried out by the subcontractor's employees. See Zucchelli v. City Construction Co., 1958, 4 N.Y.2d 52, 172 N.Y.S.2d 139, 149 N.E.2d 72; Employers Mutual Liability Ins. Co. of Wisconsin v. Di Cesare & Monaco Concrete Const. Corp., 1st Dept.1959, 9 A.D. 2d 379, 194 N.Y.S.2d 103; Gambella v. John A. Johnson & Sons, 2d Dept.1955, 285 App.Div. 580, 140 N.Y.S.2d 208; Gallagher v. United States Lines Co., 2 Cir., 1953, 206 F.2d 177, certiorari denied 346 U.S. 897, 74 S.Ct. 221, 98 L.Ed. 398, rehearing denied 346 U.S. 940, 74 S.Ct. 375, 98 L.Ed. 427; Person v. Cauldwell-Wingate Co., 2 Cir., 1949, 176 F.2d 237; Gucciardi v. Chisholm, D. C., 49 F.Supp. 581, reversed on other grounds 2 Cir., 1944, 145 F.2d 514.

In the Gambella case, the court was confronted with a suit by an employee of a subcontractor against the general contractor for injuries sustained in a fall from a defective scaffold furnished by the subcontractor. In holding that the judgment against the general contractor was erroneously rendered, the court reiterated the general proposition that a general contractor owes to employees of a subcontractor only the duty of making safe by reasonable care the places of work provided for by him and the ways and approaches, as distinguished from apparatus and machinery supplied by the subcontractor-employer. See in accord Hess v. Bernheimer & Swartz Pilsener Brewing Co., 1916, 219 N.Y. 415, 114 N.E. 808.

Plaintiff does not contend that the defendant physically supervised the erection of the scaffold from which plaintiff fell, but rather admits that the erection of the scaffold was accomplished solely by Lieberman and his fellow servants.

Therefore, from the above authorities, it is clear that the precise issue posed is whether or not the defendant, either in its role as owner or general contractor,[3] assumed the responsibility of supervising the erection and use of the scaffolding from which the plaintiff fell under the terms of the contract entered into by it with Lieberman.

Reading the provisions of the contract, which was received in evidence, it appears that the defendant retained for itself general authority to approve the equipment to be used for the performance of the interior painting of the Post Office, for the purpose of insuring that the independent contractor complied with its contract to do the work in a satisfactory manner, rather than to regulate the details of the work. In this respect, every actual term of the contract referable to the erection and use of the scaffolding equipment indicates that it was the understanding of the contracting parties that the painting contractor was to be responsible for the proper installation and use of such equipment.

The Court concludes that this limited contractual power of general supervision retained by the general contractor (and/or owner) for the purpose of seeing that the work was being properly done by the subcontractor, according to the plans and specifications, does not make it liable for the independent negligent act of the subcontractor. This rule has become axiomatic under settled New York authorities, which are collected in Moriarty v. W. T. Grant Co., Sup.1956, 155 N.Y.S.2d 218. And this very reasoning was applied in rendering judgment for the owner of a vessel by the Court of Appeals for the Second Circuit, again citing New York authorities, in Gallagher v. United States Lines Co., supra.

■ One more point raised by plaintiff merits attention, namely the applicability of Section 241 of the New York Labor Law, which states:

"All contractors and owners, when constructing or demolishing buildings or doing any excavating in connection therewith, shall comply with the following requirements:

\*      \*      \*      \*      \*      \*

"6. The board of standards and appeals may make rules to provide for the protection of workmen in connection with the excavation work for the construction of buildings, the work of constructing or demolishing buildings and structures, and the guarding of dangerous machinery used in connection therewith, and the owners and contractors for such work shall comply therewith."

The provisions of Section 241 relate to the proper flooring to be provided workmen putting up structural beams while the building is in the process of erection or demolition, and the proper guard rails to be provided around elevator shafts and hod-hoisting equipment used for the purpose of lifting materials between the floors of such a building.

Conceding that under New York law, i. e., Rufo v. Orlando, 1955, 309 N.Y. 345, 130 N.E.2d 887, the duty of a subcontractor to an employee of a general contractor to provide shoring and bracing in connection with excavation work is primary and nondelegable, the statute and the Rules of the Board of Standards and Appeals (see Official Compilation of Codes, Rules and Regulations of State of New York, 7th Official Supplement, 1952, Industrial Code, Rule 23), are clearly inapplicable to the kind of work to be performed under the terms of defendant's contract with Lieberman. Every applicable New York authority remotely in point relates solely to the use of planking and other equipment on floors of buildings in the process of erection, al-

---

3. The New York courts have held that the standard of responsibility imposed on an owner of property is the same as that imposed on a general contractor, Sweeney v. Spring Products Corp., 257 App.Div. 104, 12 N.Y.S.2d 72, affirmed 1940, 282 N.Y. 685, 26 N.E.2d 814.

teration or demolition, and the New York courts have carefully distinguished liability resulting from an alleged violation of Section 241 from that relating to Section 240, previously discussed. See Komar v. Dun & Bradstreet Co., supra.

For the reasons set forth above, the Court concludes that plaintiff's injury was not proximately caused by any negligence of the defendant. Therefore it becomes unnecessary to determine issues (2) and (3) set forth in the Pre-Trial Order.

This opinion shall constitute the findings of fact and conclusions of law of the Court.

Let judgment for the defendant be entered accordingly.